12810

ZIMMERMAN v. BENNETT *ET AL.*

(151 S. E., 214)

*Messrs. Harvey W. Johnson* and *Frank B. Gary,* for petitioner,

*Messrs. A. E. Hill, H. K. Osborne, J. W. Boyd,* and *T. M. Lyles,* for respondents,

January 15, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The petitioner seeks a review here by *certiorari* of the action of the board of state canvassers for municipal primaries sustaining the board of commissioners of elections for the city of Spartanburg in declaring the respondent Ben Hill Brown the Democratic nominee for mayor of that city. For the sake of brevity, we shall hereafter refer to the board of state canvassers for municipal primaries as the board of canvassers, and to the board of commissioners of elections for the city of Spartanburg as the commissioners of elections.

Spartanburg, classified as a city of between 20,000 and 50,000 inhabitants, has the commission form of government. The statutory law for the adoption by a city of that class of such form of government is contained in Article

9, c. 51, of the Code of 1922, the holding of municipal primaries being provided for in Section 4724.

It appears that on March 26, 1929, seven members of the Democratic executive committee, one from each seven of the ten polling precincts of the city, signing themselves as the principal officers of the city Democratic organization, filed with the mayor and with the chairman of the commissioners of elections, in compliance with Section 4724, a request that a primary be held for the Democratic party to nominate a mayor for the city of Spartanburg. Pursuant to this request, the commissioners of elections ordered a primary to be held, and took all necessary steps for holding the same. At the first primary, held April 30, 1929, no one of the four candidates for mayor received a majority of the votes cast, and thereupon a second primary was ordered for May 7. In this primary, the petitioner Zimmerman and the respondent Brown were the candidates for mayor, as "those receiving the highest vote at the preceding primary." The result of the vote in the second primary was declared by the commissioners of elections, on May 11, 1929, to be 2, 201 votes for Brown and 2,195 for Zimmerman, and Brown was named the nominee of the party.

On May 13, Zimmerman "protested and contested the result of the election," on the ground that certain illegal ballots had been counted, the rejection of which would have resulted in his nomination by a majority of one vote. The commissioners of elections having refused to rescind their action, Zimmerman appealed to the board of canvassers (Sections 329 and 330, Civil Code of 1922) ; the ground of appeal being thus stated by the commissioners in their return to that board :

"The appeal here involves no charge of irregularity in the noticing and holding of the election; no charge that persons not qualified were allowed to vote; no imputation of fraud or bad faith. The whole contention of the appellant or contestant is that certain ballots were counted which were

irregular, and that, if all the ballots claimed by him to be irregular had been rejected, he would have had a majority of one vote, whereas, rejecting none, his opponent had a majority of six."

The board of canvassers heard the appeal on August 12, 1929, and by a unanimous vote affirmed the action of the commissioners of elections. Thereupon Zimmerman filed his petition with this Court for a writ of *certiorari* to review the proceedings before the board and to correct any errors of law therein. The writ was issued, to which the board made return.

The first complaint is that the board of canvassers committed error of law in permitting an interested party to sit as one of its members in the hearing on the appeal. It appears that, at the time the appeal was taken by the petitioner from the decision of the commissioners of election, an injunction was granted by this Court, restraining the commissioners from holding the general municipal election in the city of Spartanburg pending the hearing of the appeal. The general election was held on May 14, and later Wilton H. Earle, of Greenville, appeared before this Court as one of counsel for the commissioners, seeking to have vacated the restraining order theretofore issued. Thereafter he sat as a member of the board of canvassers on the hearing of the appeal. The petitioner contends that the matter in which Mr. Earle appeared for the commissioners of elections before this Court and the appeal to the board of canvassers grew out of the same state of facts, and that therefore he was disqualified to sit as a memeber of the hoard in the hearing before that body.

Even if Mr. Earle's connection with the motion made before this Court was such as to disqualify him from sitting as a member of the board of canvassers at the hearing on the appeal, the petitioner's rights were not thereby prejudicially affected, for the reason that the board's decision was unanimous, and for the further reason that this Court holds

that the decision of the board of canvassers in affirming the action of the commissioners of elections was correct:

■ With regard to the admission of testimony and affidavits by the board of canvassers at the hearing of the appeal, alleged by the petitioner to be error, we find the following in the board's return to this Court:

"In conducting the hearing, the board was liberal in allowing time for argument and the statement of position. Under objection, it allowed the examination of witnesses by both parties, and the filing of affidavits. But, in the absence of any testimony or affidavits, the board's decision would have been the same. It was manifest throughout that the appellant's effort was to make a selective contest of just such number and character of ballots as would produce the result of a majority of one in his favor. The positions taken by his counsel before us seemed inconsistent with any uniform and sustained basis of objection to the 86 ballots segragated by the board of commissioners of election at their request. In fact, after noticing the producing of the 86 ballots before us, they sought to limit their objections to only 26 selected out of these."

The liberality of the board in the matters complained of—which, incidentially, was extended to both parties—even if error, was harmless, for the reason that it appears that the testimony and affidavits admitted did not affect the board's decision, and for the further reason that this Court holds, without recourse to the testimony or affidavits, that the board reached a correct conclusion.

■ The most serious assignment of error made by the petitioner is that certain illegal ballots were counted, which changed the result of the election.

With regard to this question, the respondents say that, as the petitioner did not specifically set forth in his petition the respects in which the ballots were irregular or illegal, simply stating that "certain illegal ballots were counted," the question is not properly before the Court. While it ap-

pears that there is some merit in this contention *Smith v. Saye,* 130 S. C., 20, 125 S. E., 269, the Court will waive any defect in the petitioner's pleadings, and will consider the question on its merits. In his statement of facts, the petitioner says:

"The alleged illegality of the ballots claimed by petitioner is that they were improperly prepared; that is, that the voter instead of scratching out the name of either candidate as required by statute, had the name untouched, but had opposite the name of one or the other of the candidate placed · in some instances a check and in the other instances a cross mark. There were 23 of such ballots, 15 of which were counted for the defendant, Brown, and 8 for the petitioner. Had they not been counted the petitioner would have won by one vote, receiving 2,187 votes to defendants 2,186. The correctness of this contention is admitted in the official return of commissioners of election for the city of Spartanburg to the state board of canvassers which return is a part of the record certified up to this Court."

The commissioners of elections, in their return to the board of canvassers, made the following statement with regard to petitioner's ground of protest:

"Certain ballots, instead of having the name of one of the candidates for mayor scratched through, had a cross or check opposite the name of one of these candidates. These ballots were counted by the managers and by the board as for the candidate whose name was checked."

"In the first primary election, there were four candidates for mayor, eight candidates for two positions on the counsil, three candidates for commissioner of public works. The ballot was in accordance with the statute law and contained directions as 'vote for one,' 'vote for two,' as the number to be elected required. The checking or putting across opposite the name of one candidate for mayor, or of two candidates for commissioners, under these circumstances would inevitably and without doubt be interperted as a clearly expressed

intent to vote for the candidates against whose name they were placed. They were so counted. It is proper to accord the same intent to the ballots which may have been cast in the second primary by the same persons who cast them in the first, where no doubt as to intent could arise, because of the number of candidates and the number to be voted for."

The board of canvassers have this to say in their return to this Court:

"Every member of the board being of the opinion that the board of commissioners of election for the city of Spartanburg correctly ascertained from the face of the ballots the intent of the voters casting them, and that they had correctly declared the result, we held accordingly."

There is no doubt that the voter's intent in casting his ballot will control, if it can be determined without speculation and its expression is not in conflict with some requirement of law. If there be a statutory provision requiring that the ballot be prepared in a certain manner, it must be so prepared; otherwise it will be illegal and cannot be counted.

In the general primary law of the state (Articles 1 and 2 of Chapter 13, Code 1922), it is provided (Civ. Code 1922, § 304) that the voter shall "prepare his ballot by scratching out the names of the candidates for whom he does not care to vote"; and it appears that the petitioner invokes this provision in support of his position.

We do not think, however, that the general primary law applies in this case. That law provides (Article 1) that political primary elections held by any political party shall be conducted in the manner prescribed by the constitution and rules of the party, subject to the statutory provisions for party organization, qualifications for voting, enrollment, dates, and manner of holding elections, declaration of recults, protests, contests, appeals, etc. The Australian system of balloting (Article 2, of which Section 304 is a part) was incorporated in the general primary law in 1918 (30 St. at

Large, p. 811). This Article requires the use of booths, coupons tickets, and polling places furnished with guard rails, prescribes the manner of preparation of ballots, provides for assistance to illiterate or disabled voters, regulates admission to polling places, etc.

The provisions of Section 4724, under which municipal primaries of cites of the class named are held, are quite different from those of the general primary law. Under this Section, no municipal party primary can be held unless it be conducted and the qualification for suffrage enforced as provided therein; and no political party can itself hold primaries, but the commissioners of elections are required to order and hold them for any political party when the chief officer or officers of its city organization shall so request the mayor and the chairman of the commissioners of elections. Under Section 4724, primary elections are conducted for all political parties by officers—the board of commissioners of elections for the city—created by statute; under the general primary law, by persons named by the management of the political party holding the primary. The preliminary steps for the holding of primaries, including enrollment and registration, are altogether different under the two statutes. The general primary law contains specific requirements as to preparation of ballots by voters, while Section 4724 contains no provision on that subject. Under the general law, protests and contests are heard by the county committee of the party holding the primary appeal being provided to the state committee of such party; under Section 4724, protests and contests are made before the commissioners of elections of the city holding the primary for the political party or parties requesting it, appeal lying (special provision, Sections 329 and 330) to the board of state canvassers for municipal primaries.

For reasons satisfactory to itself, the law-making body of the state has seen fit to make one provision for the holding of general primary elections and another for the holding of

municipal primary elections in cities of the class named. There is no conflict between the two statutes—each applies to a different state of circumstances and to a different situation; and we find no such similarity between them, or between the conditions and circumstances to which they are respectively applicable, as would justify us in holding that the provisions of the general primary law are applicable or were intended to apply to municipal primaries in cities of this class. Nor do we find any provision in Section 4724 which would lead us to that conclusion.

. We cannot, therefore, agree with the contention that Section 304, a part of the general primary law, is authority for requiring voters in municipal primaries of cities of the class under consideration to prepare their ballots in accordance with the provisions of that Section.

There being no requirement of law applicable in the present case as to the preparation of ballots, the question of the voter's intent must be determined from the face of the ballot itself. The ballots were properly printed in accordance with the provisions of Section 4724. In the second primary, there being two candidates, as stated, for mayor, there were printed above their names the words: "Vote for one." We have carefully examined all of the ballots, including the 23 objected to, which were before the board of canvassers. We find that, in some instances, the voter scratched out the name of one candidate, and in addition placed a check mark opposite the name of the other. In such case there can be no doubt as to the voter's choice; he merely took a double precaution to insure that his intent should be understood. The 23 ballots objected to each contained a check mark opposite the name of one of the candidates, in some instances Brown, in other instances Zimmerman, but the name of no candidate was scratched. We think, however, that the voter's intent in the case of these ballots is clear. No doubt he read the words "vote for one" printed above the names of the candidates, and, in what seemed to him a natural and reasonable way, ,

proceeded to indicate his choice by placing a check mark opposite the name of the candidate for whom he desired to vote rather than by erasing the name of the other. Our examination of these ballots, in the light of the direction printed thereon and common knowledge of the ordinary use of the check mark, convinces us that the board of canvassers committed no error in affirming the action of the commissioners of elections.

The petition is dismissed, and the decision of the board of state canvassers for municipal primaries approving the action of the commissioners of elections for the city of Spartanburg is hereby affirmed.

In view of the conclusions reached by the Court in the foregoing opinion, it is ordered that the rule to show cause issued by this Court in the contempt proceedings in the matter of *Zimmerman v. Bennett et al.* be and the same is hereby discharged.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.