17497

W. E. REDFEARN, Petitioner, v. BOARD OF STATE CANVAS-
SERS OF SOUTH CAROLINA and Margie E. Pusser,
Respondents

(107 S. E. (2d) 10)

*Messrs. James P. Mozingo, III, Benny R. Greer* and *Archie L. Chandler,* of Darlington, *for Petitioner.*

*Messrs. T. C. Callison, Attorney General, Daniel R. Mc-Leod, Assistant Attorney General* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Respondent, Board of State Canvassers of South Carolina,*

*Messrs. Spruill & Harris,* of Cheraw, *for Respondent, Margie E. Pusser.*

February 6, 1959.

LEGGE, Justice.

The Democratic primary election held in Chesterfield County in June, 1958, resulted in the nomination of W. E. (Bill) Redfearn as the party candidate for the office of Judge of Probate of that county. Among his opponents in that election was Mrs. Margie E. Pusser. In the general election of November 4, 1958, Mrs. Pusser, as a "write-in" candidate, received a plurality of the votes cast; and over Mr. Redfearn's protest the Board of County Canvassers, and later the Board of State Canvassers, declared her elected. He then petitioned this court for a writ of certiorari to review the action of the latter Board, and the matter is now before us on that petition and the returns of the Board and of Mrs. Pusser pursuant to the rule to show cause issued thereon.

Petitioner contends, at the outset, that Mrs. Pusser was ineligible to oppose him in the general election because of the pledge (Code, 1952, Section 23-373) taken by her as a candidate in the primary "to abide by the results of said primary and to support in the next general election all candidates nominated in said primary."

We are not here concerned with whether Mrs. Pusser's position, as a "write-in" candidate in the general election, should or should not be considered as morally or ethically improper. Our function is to determine her eligibility as a matter of law.

Article I, Section 10 of the Constitution of 1895 declares that "every inhabitant of this State possessing the qualifica-

tions provided for in this Constitution shall have an equal right to elect officers and to be elected to fill public office." That Mrs. Pusser possessed the qualifications prescribed by the Constitution is not questioned.

We need not undertake to inquire whether, since probate courts (except in Charleston County) derive their existence not from the Constitution, but from legislative enactment, *Bradford v. Richardson,* 111 S. C. 205, 97 S. E. 58, the legislature may require qualifications or impose disqualifications, other than those prescribed by the Constitution, for election to the office here in controversy. *Cf. McLure v. McElroy,* 211 S. C. 106, 44 S. E. (2d) 101, and *Lee v. Clark,* 224 S. C. 138, 77 S. E. (2d) 485. It has not attempted to do so.

Petitioner also contends that persons who had voted in the primary, having then taken oath (Code, 1952, Section 23-379) to "support the nominees of this primary election in the general election next ensuing", were thereby disqualified to vote against him in the general election. Assuming that such votes could be identified, petitioner's claim of disqualification is as untenable as his similar charge against his opponent, and for like reason, *viz.*: that neither by the Constitution nor by statute is the voter disqualified in such case.

We turn now to petitioner's contention that the Board erred in allowing certain ballots to be counted for Mrs. Pusser. Uncontroverted are the following facts apparent from the Board's return to the rule, and from photostatic copies of the questioned ballots:

In the general election the name "W. E. (Bill) Redfearn" appeared on the ballots as the Democratic nominee for the office of Judge of Probate. Many voters wrote in, on their ballots, the names of other persons for this office, the total vote for said office (excluding two precincts all ballots in which were rejected on Mr. Redfearn's protest) being found by the Board of County Canvassers to be as follows: Pusser

1353, of which Redfearn protested 119; Redfearn 1236, of which Pusser protested 15; others 1231; void 156.

Redfearn contends that the 119 votes protested by him should have been either: (1) counted as votes for him, or (2) thrown out. It is apparent, therefore, that:

(a) Counting the votes protested by Redfearn as votes for him, and rejecting the Pusser protest *in toto,* the result would be: Redfearn 1355, Pusser 1234; and

(b) Throwing out the votes protested by Redfearn, and rejecting the Pusser protest *in toto,* the result would be: Redfearn 1236, Pusser 1234.

The ballots with which we are concerned conformed to the plan outlined in Section 23-310 of the Code, as follows (caption omitted):

Instructions—To vote a straight party ticket, make a cross (x) in the circle (O) under the name of your party. Nothing further need or should be done. To vote a mixed ticket, or in other words for candidates of different parties, omit making a cross (x) mark in the party circle at the top and make a cross (x) mark in the voting square ☐ opposite the name of each candidate on the ballot for whom you wish to vote. If you wish to vote for a candidate not on any ticket, write or place the name of such candidate on your ticket opposite the name of the office. Before leaving the booth, fold the ballot so that the initials of the manager may be seen on the outside.

|  | DEMOCRAT |
| --- | --- |
| OFFICE | O |
| Senate | ☐ Paul M. Arant |
| House of Representatives | ☐ D. H. Douglas, Sr. |
|  | ☐ J. A. Spruill, Jr. |
| Probate Judge | ☐ W. E. (Bill) Redfearn |
| Sheriff | ☐ Don D. Hill |
| Commissioner Central Dist. | ☐ Wade H. Miles |

Commissioner
Eastern Dist.     ☐ Callie C. Anderson
Commissioner
Western Dist.     ☐ Robert A. Raley

On each of the 119 ballots protested by Redfearn, the voter had made a cross or check mark in the circle under the word "Democrat". On 97 of them the name "W. E. (Bill) Redfearn" had been scratched out and in the column to the right of it, opposite the name of the office, had been written:

On 93, either "Mrs. Margie Pusser" or "Margie Pusser" or "Mrs. Marjorie Pusser" or "Mrs. M. Pusser" or Mrs. Pusser" or "Pusser";

On 1, "Margie P."; and

On 3, "James McRae".

On 1, the name "Margie Pusser" had been written directly under the erased name, and still opposite the name of the office.

On each of the other 21, the name "W. E. (Bill) Redfearn" had not been stricken, but there had been written, opposite the name of the office:

On 18, the name of Mrs. Pusser;

On 2, the name "Billy"; and

On 1, "Jr."

(In regard to the 3 last mentioned, it is noted that Mr. Redfearn, Sr., the petitioner, had for several years been Judge of Probate, his term expiring in 1958, and that his son, W. E. Redfearn, Jr., also known as Billy Redfearn, had been employed by him as clerk in that office until the summer of 1958.)

Petitioner contends here, as he did before the Board of State Canvassers, that each of the 119 ballots above mentioned:

(1) should have been counted in his favor because the marking of the party circle indicated a vote for the Democratic nominees and therefore, as to the office of Probate Judge, for him; or, failing that,

(2) should have been thrown out, as a vote for two persons for that office, *viz.*: himself as the party nominee, and the "write-in" candidate.

The Board, rejecting both contentions, held that each of the ballots in question clearly evidenced intention on the part of the voter to vote not for Mr. Redfearn, but for the person whose name the voter had written in. Accordingly, it ruled that the said ballots had been properly cast as follows:

For Mrs. Pusser ................................113
For W. E. Redfearn, Jr. ........................ 3
For James McRae ............................. 3

Mrs. Pusser's protest concerned 15 ballots, as follows:

On 11, the party circle was marked, the name "W. E. (Bill) Redfearn" was scratched, and no other name was written in;

On 1, the party circle was not marked, Redfearn's name was scratched, and the word "Pussel" was written in opposite it;

On 1, the party circle was not marked, Redfearn's name as printed was not scratched, and the name "Bill Redfearn" was written in;

On 1, the party circle was not marked, and only the printed initials "W. E." was scratched;

On 1, the party circle was marked, Redfearn's name as printed was not scratched, and no other name was written in.

The Board sustained the protest as to the 12 first mentioned, allowing the remaining 3 as votes for Mr. Redfearn.

In deciding protests coming before it on appeal from the County Board of Canvassers, the State Board is, by the express language of Section 23-476 of the Code, a judicial tribunal. Its decision is subject to review on certiorari as to errors of law only; and this court will not review its findings of fact unless they are wholly unsupported by the evidence. *State ex rel. Welsh v. State Board of Canvassers,* 79 S. C. 246, 60 S. E. 699; *State ex rel.*

*Davis v. State Board of Canvassers,* 86 S. C. 451, 68 S. E. 676. See also *Feldman v. South Carolina Tax Commission,* 203 S. C. 49, 26 S. E. (2d) 22; and *Pettiford v. South Carolina State Board of Education,* 218 S. C. 322, 62 S. E. (2d) 780, certiorari denied, 341 U. S. 920, 71 S. Ct. 742, 95 L. Ed. 1354.

The purpose of an election is to express the will of the electorate. It follows that in evaluating contested ballots the Board must in each case seek to ascertain the intent of the voter; and that such intent will control if it can be determined without speculation and its expression does not violate some positive requirement of law. *Zimmerman v. Bennett,* 154 S. C. 116, 151 S. E. 214. It is well settled, too, that in such a contest the ballots themselves constitute the highest and best evidence of the will of the electors. 18 Am. Jur., Elections, Section 306, p. 377.

With these principles in mind, we proceed first to consider whether, purely as a matter of law and apart from any factual finding of the voters' intent, the Board erred in rejecting Mr. Redfearn's protest of the 119 ballots before mentioned. That issue actually involves two related questions, the first concerning 98 ballots, the second concerning 21, as follows:

1. Where a voter has scratched out the name of the party nominee and has written on the ballot, opposite the name of the office, the name of a candidate for that office other than such nominee, and has also put a cross or check mark in the party circle, does such marking of the party circle render the ballot invalid?

2. If the name of a candidate other than the party nominee has been written by the voter opposite the name of the office, is the ballot invalidated if the voter has also marked the party circle and has not scratched the name of the party nominee?

The "instructions" for marking the general election ballot, as set out in Section 23-310 of the Code, are not to be construed with such inflexible literalness

as to render the slightest deviation from them fatal to the ballot. Nothing in the language of the section requires so rigid a construction. They are, in our opinion, directory, and failure to follow them to the letter will not invalidate the ballot unless thereby such doubt has been cast upon the voter's intention, as evidenced by his ballot, that to determine it would involve speculation rather than reasonable inference. In this view we are confirmed by Section 23-357, which reads:

"If a voter marks more or less *names* than there are persons to be elected or nominated to an office *or if for any reason it is impossible to determine the voter's choice* for any office to be filled, his ballot shall not be counted for such office; but this shall not vitiate the ballot, so far as properly marked. *Nothing herein shall be construed to prevent any voter in a general or special election from voting for any qualified person, other than those whose names are printed on the ballot, by writing in the name of the person opposite the office.*" (Italics added.)

Neither Section 23-310 nor Section 23-357, nor any other provision of the present general election law to which our attention has been directed, requires, expressly or by necessary implication, that in order to vote for a candidate other than the party nominee the voter must not only write the name of his candidate on the ballot opposite the name of the office, but also scratch out the name of the party nominee. Nor does the statute expressly or by necessary implication forbid the counting of a ballot for a "write-in" candidate because the voter, in addition to writing in the name of his candidate, has marked the party circle.

The case at bar is readily differentiated from *Ex parte Riggs,* 52 S. C. 298, 29 S. E. 645, 647, where the statute then in force had "in unmistakable terms forbidden a ballot which is not in the prescribed form from being counted."

We conclude, therefore, that neither the marking of the party circle on the 119 ballots before mentioned, nor the failure to scratch the name of the party nominee on 21 of them, of itself rendered such ballots invalid.

Nor can we say that the Board erred in counting the said 119 ballots as votes for the "write-in" candidates (113 for Mrs. Pusser, 3 for W. E. Redfearn, Jr., and 3 for James McRae, as before stated). The very fact that on each of said ballots the voter had written, opposite the name of the office, the name of a person other than the party nominee, is clearly evidence that he intended to vote for the candidate whose name he had so written. Indeed, the last sentence of Section 23-357, before quoted, implies that such writing-in of the name is all that the voter need do to indicate his intention to cast his vote for such candidate. Determination by the Board that such was the intention of the voters, respectively, whose ballots had been challenged by the petitioner, was a finding of fact amply sustained by the evidence. It is therefore conclusive.

The Board's return to the rule is adjudged sufficient so far as it relates to Mr. Redfearn's protest. We shall not consider its action with regard to the 15 ballots protested by Mrs. Pusser, for even if such action had been erroneous it would not have affected the result of the election.

Petition dismissed.

STUKES, C. J., and TAYLOR, OXNER, and MOSS, JJ., concur.