20763

GEORGE W. GREGORY, Jr., Petitioner, v. The SOUTH CAROLINA DEMOCRATIC EXECUTIVE COMMITTEE, Donald Fowler, Chairman and Jean L. Harris, Respondents.

(247 S. E. (2d) 439)

*John I. Rogers, III,* Bennettsville, *for petitioner.*

*C. Anthony Harris,* Cheraw, *John C. Lindsay,* Bennettsville and *H. F. Bell,* Chesterfield, *for respondent Jean L. Harris.*

*James B. Richardson, Jr., of Ham & Richardson,* Columbia, *for respondents The Democratic Executive Committee and Donald Fowler, Chairman.*

September 12, 1978.

*Per Curiam:*

This a proceeding under a writ of *certiorari* wherein Petitioner, George W. Gregory, Jr., is contesting the action of the Respondent South Carolina Democratic Executive Committee (State Committee) in declaring his primary opponent, Respondent Jean L. Harris, the Democratic Nominee for District 54 of the South Carolina House of Representatives. House District 54 lies solely within the County of Chesterfield. We find the return to the writ sufficient and the petition is dismissed.

The following sequence of events gives rise to this controversy. Local party officials began counting ballots on primary election night, June 13, 1978, and reassembled on the following day to tabulate the absentee ballots. However, due to numerous and time consuming challenges, the chairman of the Chesterfield County Executive Committee (County Committee) chose to terminate the challenge process prior to its completion and to include all absentee ballots in the count.

In accordance with the statutory directive of § 7-17-510, S. C. Code of Laws (1976), the County Committee then assembled on Thursday, June 15, 1978, for the purpose of tabulating returns and declaring primary results. At this point, Petitioner Gregory protested the chairman's refusal on the day before to entertain all of his challenges to the absentee ballots. He also protested two ballots from the Patrick precinct in which a husband and wife had entered the same booth to vote. Harris likewise protested and urged the County Committee not to count nine ballots which had originated from Cheraw # 3 precinct enclosed in an envelope with a question mark penciled on the outside. The County Committee then retired into executive session and returned to declare that neither candidate would be certified and that a new primary would be held on June 27th because of "irregularities involving the absentee voting box, [and] the challenged ballots from the Patrick and Cheraw # 2 precincts." [1] Although the County Committee explicitly refused to certify either candidate as the nominee of the party, it did publish, through its Secretary, the following result of the race: George W. Gregory, Jr., 2916; Jean L. Harris, 2924.

Respondent Harris immediately petitioned the State Committee asking that it take jurisdiction of the primary for House District # 54 on the grounds that the County Committee had failed to properly comply with its statutory duty to "declare the results of the primary" and had acted without authority in ordering another primary. The State Committee heard the petition on June 19th and, after voting to assume jurisdiction, used the totals from the County Committee to declare Harris the nominee.[2] In compliance with a candidate's mandatory right to a recount in the event that the winning margin is less than one (1) percent, § 7-17-280, S. C. Code of Laws (1976), the State Committee

---

[1] The above quotation is taken from Minutes of the County Committee for June 15th, 1978.

[2] The State Committee also enjoined the second primary ordered by the County Committee.

appointed a five man subcommittee to retabulate the ballots and to hear and rule upon all challenges asserted. The recount was conducted on June 21st in accordance with the above procedure and Harris was reported the winner.

The full State Committee reassembled on June 29th and received protests from the subcommittee's findings. Gregory protested the subcommittee's decisions: (1) to count the two ballots for Harris by husband and wife in the Patrick precinct; and (2) not to count three of the absentee ballots for Gregory when the voter's identity was disputed. These contentions by Gregory were sustained. However, the State Committee denied his protests directed to the subcommittee's decisions: (1) in counting an absentee ballot where the voter had incorrectly categorized her reason for absence; (2) in not counting ten votes from Cheraw $\#$ 1 precinct in a cardboard box which were first presented for counting on Saturday, June 17th; (3) in not counting nine ballots for Gregory in Cheraw $\#$ 3 which were found in an envelope with a question mark penciled on the front; and (4) in not counting 6 absentee ballots for Gregory which were not properly witnessed. These actions resulted in the State Committee's declaration of Harris as the nominee by a vote of 2918 to 2908.

The petition initially asserts that the State Committee exceeded its authority in setting aside the County Committee's order for a new primary and assuming jurisdiction to declare the nominee, conduct a recount of ballots, and resolve challenges regarding disputed votes. Petitioner argues that the County Committee's act of ordering another primary was not inconsistent with its statutory authority in determining elections and, even if such action were error, the State Committee in its role as an appellate body should have remanded the disputed election to the County Committee for a recount and consideration of protests and challenges. The Respondents contend that a candidate's only viable remedy was to appeal to the State Committee since not only

was the County order for a rerun illegal but the Committee had also failed to perform its statutory duty "to tabulate the returns and declare the results of the primary." The Respondents further contend that a remand by the State Committee to the County Committee would have constituted a futile and time consuming gesture in light of the definitive action already taken by the County Committee.

Thus, the basic issue before us is whether the State Committee acted lawfully in assuming jurisdiction of this election under the unusual state of facts here presented. It is strenuously argued by Respondents that the County Committee abdicated its duty by failing to comply with the directive embodied in § 7-17-510. Their position is amply supported by the plain mandate of that statute which requires that:

The county committees shall assemble at their respective courthouses on the morning of the second day after the election at eleven in the forenoon to tabulate the returns and declare the results of the primary, . . ..

This section unequivocally imposed the duty of declaring primary results for House District # 54 upon the Chesterfield County Committee. This it did not do. It did, however, order another primary election for which action it had no semblance of authority.

The County Committee's refusal to declare a nominee and its accompanying order to set aside the primary because of alleged irregularities short-circuited the South Carolina statutory process pertaining to primary elections. Article 5, Chapter 17, Title 7 of the South Carolina Code of Laws (1976) entitled "Provisions Applicable to Primary Elections" provides the framework within which a candidate must contest or appeal a primary election. Section 7-17-510, which provides for declaration of results by the County Committee, is the first section set out in this article and it is the foundation upon which subsequent sections relating to the appellate process are predicated. The declaration of a

nominee as required in § 7-17-510, is an absolutely essential action without which the further appellate remedies, §§ 7-17-520, *et seq.,* cannot be energized in accordance with the statutory scheme. The refusal by the County Committee to certify either candidate created a void in the South Carolina primary election process which, as a practical matter, not only prevented Respondent Harris from addressing her further protests to that Committee in accordance with § 7-17-520, but also deprived her of a finding from which a normal appeal to the State Committee would lie. Indeed, the County Committee's act in setting aside the entire election left both candidates without any results to be utilized as a basis for appeal.

Because of the County Committee's refusal to declare a nominee and its unauthorized action in setting aside the primary election, we are convinced that the State Committee correctly assumed jurisdiction to consider Respondent's petition under the factual exigencies here present. It is not in the public interest to permit the election machinery of this State to be rendered ineffectual due to the failure of a County Committee to fulfill its statutory obligations.

In voting to assume jurisdiction over the primary election, the State Committee initially declared the nominee based on the uncertified count made public by the County Committee which showed Respondent Harris with 2924 votes and Petitioner Gregory with 2916. It further reserved all rights for a candidate to protest challenged ballots. Accompanying its declaration of candidate Harris as nominee was the Committee's decision to appoint a special subcommittee to conduct a recount of the ballots and to provide a hearing for protests and appeals arising from the subcommittee's action. Petitioner argues that the question of a recount or of any protest was not before the State Committee at its June 19th hearing because the only action in issue was the County Committee's order for a new primary elec-

tion. However, in the prayer of her appeal to the State Committee, Respondent Harris specifically asks that the Committee "take jurisdiction of the matter of canvassing and declaring the results of the Primary Election." It seems obvious that the recount and protest hearing ordered by the State Committee were necessary adjuncts to the State Committee's responsibility to declare election results since these further procedures were intended to afford the Petitioner with the same rights and remedies conferred on him by the South Carolina election laws and which had been denied by the County Committee.

The only practical consequence of the State Committee's decision to conduct a recount, in view of the County Committee's default, lies in the identity of the body which conducted the recount. In holding that the State Committee properly assumed jurisdiction to declare primary results, we would likewise find the State Committee to be the proper body to conduct this recount. In fact, the State Committee would appear to have been the only available body to perform this function in view of the fact that the County Committee had already rejected its responsibility to call for a recount by its unauthorized setting aside of the election. The recount was accomplished by a subcommittee appointed by the State Committee and conducted in the presence of counsel for both candidates and a SLED representative. Alleged errors by the subcommittee in recounting were protested by both candidates to the full State Committee at its June 29th meeting. Both candidates were allowed to present to the full Committee all available evidence in these matters in the course of a lengthy meeting.

Petitioner argues that the full State Committee was without jurisdiction to consider this evidence anew. We cannot agree. Such *de novo* jurisdiction by the State Committee is specifically authorized by § 7-17-550.

. . . that if in the opinion of at least eighteen members of the State committee such facts should be reviewed, then a

hearing *de novo* shall be held by the State committee. In the event of such review, the State committee may receive any new evidence or exhibits as it shall in its discretion deem necessary to determine the appeal.

The Petitioner contends that the record does not disclose that 18 members affirmatively voted for review in accordance with the terms of § 7-17-550. While the Petitioner appears to be technically accurate in this assertion, the record does reflect that the motion to assume jurisdiction, which under the facts here existing would be tantamount to a motion for a *de novo* review, was carried by a voice vote of the State Committee. Respondent State Committee in oral argument stated before us that such voice vote was "overwhelming" but unfortunately the record does not contain the actual count. However, we do not feel that a technical compliance by the State Committee with this statute was necessary to grant it *de novo* jurisdiction in view of the unique posture of this case. The only practical difference in a *de novo* hearing by the State Committee and the normal appellate hearing is that in the latter the State Committee is bound by the facts as determined by the County Committee. In this case, as a practical matter, no facts had been certified by the County Committee. It would seem to us that the error of the State Committee in not formally passing by the required vote a motion for a hearing *de novo* was harmless in this instance.

It is significant that the Petitioner has not attempted to show any prejudice accruing to him by reason of the procedure followed in this case. Every protest filed by the Petitioner was exhaustively heard by both the State Committee and its subcommittee. Except for the specific exceptions taken by Petitioner to certain votes allowed or disallowed by it, the Petitioner makes no complaint as to the fairness of the recount by the subcommittee. Every substantive right guaranteed to the Petitioner has been accorded him. In essence, the Petitioner complains only of the identity of the agency which afforded these rights.

We turn now to Petitioner's contentions that the State Committee erred in allowing certian ballots to be counted for Respondent Harris. In reviewing the State Committee's rulings, we are mindful that our scope of review is limited:

Review by this court, on *certiorari,* of the action of the State Democratic Executive Committee is confined to the correction of errors of law, and does not extend to consideration of the facts upon which that Committee acted, except to ascertain whether the action of the Committee was wholly unsupported by evidence.

*Berry v. Spigner,* 226 S. C. 183, 84 S. E. (2d) 381 (1954). *See also Redfearn v. Bd. of State Canvassers,* 234 S. C. 113, 107 S. E. (2d) 10 (1959).

In Petitioner's exceptions relating to absentee votes, he first contends that it was error for the State Committee to count one Mrs. Mullinax' vote for Respondent Harris because, on her application for an absentee ballot, she incorrectly categorized her reason for absence as "(8) Professions of Ministry, Teaching, and medical." Mrs. Mullinax, however, had written on her application that she would be at the Baptist Convention and the uncontroverted evidence shows that she had in fact attended the Convention with her husband, a Baptist minister. Upon an examination of our statutory laws governing absentee voting, § 7-15-310, *et seq.,* we find no provision directing that a voter be disenfranchised for checking the wrong reason for being absent on application for an absentee ballot. We think it was well within the discretion of the State Committee to tabulate this ballot.

Further exception is taken to the State Committee's action in disregarding eight (8) absentee ballots, six (6) of which were for Petitioner Gregory and two (2) for Respondent Harris, which did not bear the signature of the witness as required by statute. While we agree with Petitioner that our absentee voting statutes should be

given a liberal construction, we cannot extend statutes to accommodate errors if such interpretation would be contrary to clear mandatory language by the Legislature. 26 Am. Jur. (2d) Elections, §§ 250, 252. Section 7-15-220, 1976 S. C. Code of Laws (Cum. Supp. 1977) provides that "the oath . . . shall be signed by the absentee ballot applicant and witnessed . . ." and the following section stipulates that ". . . [N]o ballot shall be counted unless the oath is *properly signed* and enclosed therewith [emphasis ours] . . ." Section 7-15-230, 1976 S. C. Code of Laws (Cum. Supp. 1977). We are of the opinion that the latter section, having as its purpose the assurance of the authenticity of the absentee vote, would mandate the exclusion of absentee votes which were not signed by a witness. If the only act necessary for the ballot to be counted is the voter's signature, the Legislature would not have used the term "properly signed". If "properly" does not refer to witnessing, then it is redundant and meaningless. We accordingly conclude the State Committee's actions regarding these absentee ballots were lawful and amply supported by evidence.

The Petitioner further contests the State Committee's actions in refusing to count two groups of ballots which were found outside ballot boxes. The first of these exceptions raises the question of whether it was proper for the special committee to refuse to open and count ten (10) allegedly challenged ballots from Cheraw # 1 precinct separately contained in sealed envelopes which were subsequently discovered in a cardboard box on June 17th. Although the Petitioner argues that the Executive Committeeman from Cheraw # 1 precinct delivered these challenged ballots to the County Committee in compliance with the terms of § 7-13-830, the undisputed facts disclose a noncompliance with the second portion of that statute which directs that these votes be decided at a meeting held pursuant to § 7-17-510 which, under the facts of this case, would have been the County Committee's June 15th meeting. It is significant to note that the Executive Committeeman from

Cheraw # 1 precinct who attested to the challenge of these ballots attended the June 15th County Committee meeting but failed to bring these challenged ballots to the attention of that Committee. When these circumstances are considered in conjunction with the testimony tending to cast doubt on the security measures regarding these ballots, we are convinced that the State Committee had sufficient evidence to warrant its decision in excluding these ballots.

The final category ballots for our consideration concerns nine (9) ballots from Cheraw # 3 precinct which were enclosed in an envelope along with a number of ballots from several other races. Petitioner contends that since the County Committee properly counted these nine ballots in his favor, the State Committee should be bound by this previous uncertified determination in accordance with § 7-17-540. We have already spoken to the authority of the State Committee to hear evidence *de novo*. Testimony was given to the effect that various poll workers had placed in this envelope ballots found in the wrong box at a time when the proper box for these ballots had already been tabulated and locked. Another local party official testified that "several" but "less than ten" unmarked ballots were discovered from this precinct while he was calling ballots for House District # 54, yet no unmarked ballots were recorded from the Cheraw # 3 precinct during the State Committee recount. It also is worthy of note that all nine of these ballots were for Petitioner Gregory when Respondent Harris had in fact carried the precinct by a vote of 326 to 267. The record contains other evidence supportive of the State Committee's position. Thus, from a consideration of all the circumstances, we are unable to say that the decision by the State Committee to exclude these ballots was not supported by the evidence.

A careful consideration of the record convinces this Court that the action of the South Carolina Democratic Executive Committee, with reference to all questions before the Court

in this case, should be affirmed. It is therefore, the judgment of the Court that the writ of *certiorari* heretofore issued be, and it is hereby, discharged.

Petition dismissed.