## 19026

I. D. YONCE, Appellant, v. Charles E. LYBRAND, Gene Heuet and Walter Morgan, as the County Council of Edgefield County, Respondents.

(178 S. E. (2d) 148)

*Messrs. J. Roy Berry,* of Johnston, and *W. Ray Berry,* of Columbia, *for Appellant,*

*Messrs. Charles W. Coleman, Joe F. Anderson* and *John F. Byrd, Jr.,* all of Edgefield, *for Respondent,*

March 12, 1970.

BRAILSFORD, Justice.

This is a taxpayer's action to enjoin the issuance of bonds by Edgefield County because of alleged illegality in the referendum by which issuance of the bonds has been approved. The circuit court sustained the legality of the election, and the taxpayer has appealed.

By Act No. 151 of 1968 the General Assembly authorized issuance of bonds by the county council for Edgefield County in the sum of $400,000.00 for the construction of a hospital, and the levy of a tax not exceeding seven mills for the operation of the hospital, provided that the bond issue and tax levy should be approved by qualified electors of the county in the general election to be held in November, 1968. The form of questions to be printed on the referendum ballots was specified, and the Act further provided:

"The county council shall cause an appropriate notice as to such questions and election to be published in a newspaper published in Edgefield County on at least three occasions, the first of which is to be not more than twenty-one days nor less than fifteen days prior to the general election in November, 1968. The notice shall contain the following information:

"1. The questions to be voted upon,

"2. The qualifications imposed upon persons voting, and

"3. Such other information as may be required to fully apprise all persons of the nature of the questions to be voted upon."

A notice of the referendum was published in The Edgefield Advertiser of October 23 and of October 30, and in the Ridge Citizen of October 24 and October 30. Both publications are Edgefield County weekly newspapers. The general election in 1968 was held on November 5th.

The complaint alleges that the referendum was illegal because the first publication of the required notice was less than fifteen days prior to the election, and the notice as published failed to state the qualifications imposed upon persons voting and failed to list the polling places. These facts are admitted. However, a notice of the general election at which the referendum was held was also published in the same editions of the two newspapers, and this notice did state that each elector would be required to present a registration certificate (green) in order to qualify to vote. This notice also included a list of the precincts and the names of the managers.

While it would have been far better if the officials in question had complied strictly with the rather simple directions of the statute, we must agree with the circuit court that the result of the election was not affected or rendered doubtful in any way by the deviations relied upon. It is apparent from the record that the body of electors was well advised of the election and that it resulted in a full and fair expression of their will. The four copies of Edgefield County newspapers, in which the notice of referendum was published and which are a part of the record, are crowded with political advertisements looking toward the general election in which there was strong voter interest because of many important offices to be filled. Some eighteen references to the hospital referendum appear in these two issues of the two papers, including news articles and political advertisements for and against. A rather vigorous campaign for support by opponents and proponents of the proposal is evident and resulted in higher than usual voter participation. Of 4,745 registered voters of the county, 80% cast ballots on the bond issue and 76% voted on the tax levy. In each instance a substantial

majority of those voting supported the construction and operation of a hospital.

The time and place of this election and the questions to be submitted to the electors were all fixed by statute. The required publication of an appropriate notice was not jurisdictional, but was to insure public notice of the election, which had been authorized by the legislature. No inference may be drawn from the record that a single vote was lost or affected by failure to publish a notice in strict compliance with the statute. It is, instead, clearly inferable that the publicity actually brought to bear on the issue was far greater than would have been afforded by strict compliance alone. We agree with the circuit court that this is an appropriate case for application of the rule that "(u)nless the result of an election is changed or rendered doubtful, it will not be set aside on account of mere irregularities or illegalities." *State ex rel. Welsh v. State Board of Canvassers,* 79 S. C. 246, 248, 60 S. E. 699, 700 (1908). This rule was quoted with approval in *Harrell v. City of Columbia,* 216 S. C. 346, 58 S. E. (2d) 91 (1950), in which the court found that there had been substantial compliance with the law respecting publication of notice of an annexation election, but stated that even if this were not so, "the same cannot be effective to invalidate the elections, in the absence of a showing that by reason of such irregularity some person or persons were deprived of their right to vote, or that the result of the elections was thereby changed or rendered doubtful." 216 S. C. at 355, 58 S. E. (2d) at 96.

In *Phillips v. City of Rock Hill,* 188 S. C. 140, 198 S. E. 604 (1938), a bond election was sustained in spite of a deviation from statutory directions as to time for publishing notice. Although the decision turned on the court's construction of the particular statutory language as directory, the following general rule was quoted with approval:

" 'The test for determining whether an election is invalidated for want of a notice prescribed by statute is whether

* * * the voters have had knowledge of the election and full opportunity to express their will.' " 198 S. E. at 607.

In several cases we have held that the failure to observe statutory requirements with respect to time for opening and closing books for the registration of qualified electors prior to a municipal election did not result in an illegal election in the absence of a showing that "a number of qualified electors sufficient to change the result had failed to obtain registration certificates because the books were not open during the time fixed by statute, and that they had thereby lost their right to vote." *Betha v. Town of Dillon,* 91 S. C. 413, 414-415, 74 S. E. 983, 984 (1912). See also *Clinkscales v. Fant, Mayor,* 116 S. C. 206, 107 S. E. 515 (1921), and *Davis v. Town of Cayce,* 166 S. C. 372, 164 S. E. 883 (1932).

There is strong support in the authorities for the rule stated by this court in *State ex rel. Birchmore v. Board of Canvassers,* 78 S. C. 461, 59 S. E. 145, 14 L. R. A., N. S., 850 (1907), "to the effect that, where the result of an election is not made doubtful nor changed, irregularities or illegalities, in the absence of fraud, will not cause the expressed will of the body of the voters to be set aside, unless a constitutional provision is violated or it is specifically provided by legislative enactment that such irregularity or illegality shall invalidate the election." 78 S. C. at 467, 59 S. E. at 146. See 26 Am. Jur. (2d), Elections, Sec. 193, *et seq.* (1966), and 29 C. J. S., Elections, § 71, *et seq.* (1965). It is not contended that any of the exceptions stated are present in this case.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.