### 20788

In re Theodore N. TAYLOR, Petitioner, v. John ROCHE, as Chairman and James Sexton, W. E. Taylor, Mrs. Sudie Wicker, Mrs. Cheryl Bannister, Heyward Amick, and David L. Ruff, Individually and as members constituting the Newberry County Board of Education, and Daniel R. McLeod as Attorney General for South Carolina, Respondents.

Ex parte John ROCHE, as Chairman and James Sexton, W. E. Taylor, Mrs. Sudie Wicker, Mrs. Cheryl Bannister, Heyward Amick, and David L. Ruff, Individually and as members constituting the Newberry County Board of Education, and Daniel R. McLeod, as Attorney General for South Carolina, Petitioners.

(248 S. E. (2d) 580)

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Kenneth P. Woodington,* Columbia, *Joseph W. Hudgens,* of *Pope & Schumpert,* Newberry, and *Huger Sinkler,* of *Sinkler, Gibbs & Simons,* Charleston, *for petitioners.*

*Jack F. McGuinn* and *Lewis C. Lanier,* Columbia, *for respondents.*

*Joseph H. Earle, Jr.,* Greenville, and *Theodore B. Guerard,* of *Guerard & Applegate,* Charleston, *for Greenville County, O. Wayne Corley* and *Daniel R. McLeod, Jr.,* of *McNair, Konduros, Corley, Singletary & Dibble,* Columbia, *in their own behalf, amici curiae.*

October 23, 1978.

*Per Curiam:*

This action was originaly instituted on August 11, 1978 by the plaintiff below, Theodore N. Taylor, in the Court of Common Pleas for Newberry County seeking both a temporary and permanent injunction against John Roche, Chairman of the Board of the Newberry County School District, and his fellow board members, the defendants below,[1] to prevent the School Board from issuing School Building Bonds of the School District of Newberry County in the amount of $2,700,000. On motion before this Court, of the petitioners here, and defendants below, the case was removed from the Court of Common Pleas of Newberry County and was transferred to the original jurisdiction of this Court by *per curiam* order dated August 24, 1978.[2] The matter is now before this Court on a Motion for Summary Judgment propounded by the petitioners here, the defendants below.

The gravamen of the Complaint (styled Petition) is that new Article X of the South Carolina Constitution, which became effective from and after November 30, 1977,[3] was

---

[1] The Attorney General is a statutorily required party. *S. C. Code Ann.* Section 15-53-80 (1976).

[2] *S. C. Code Ann.*, Sections 7-13-2110, *et seq.* (1976) (enacted by Act 205 of 1975) established a Constitutional Ballot Commission comprised of the Attorney General, the Director of the State Election Commission and the Director of the Legislative Council with the duty of examining each proposed amendment to the State Constitution. It further provides that if the amendment is of such a nature that it might not be clearly understood by the voters, it becomes the duty of the commission to provide a simplified or more detailed explanation, where necessary or appropriate, of the meaning and effect of the amendment. This explanation is printed on the paper ballot used in the election or otherwise made available where mechanical devices are used for voting.

Section 7-13-2130 provides that the South Carolina Supreme Court shall have exclusive and original jurisdiction in any proceeding challenging the amendment explanations prepared by the Ballot Commission.

The record here showed that the ballot used contained the simplified explanation of the Ballot Commission. While the language of the Complaint related to the form of the ballot as it appeared in the proposing resolution (Act 750 of 1976) it was clear that this Court's determination would depend not merely upon the language of the question employed by the General Assembly but also upon the "simplified explanation" as well. It was therefore, clear that Section 7-13-2130 was applicable and this Court assumed original jurisdiction.

[3] Act No. 71, Section 3 of the 1977 Joint Acts and Resolutions of South Carolina.

improperly submitted at the 1976 general election with the result that the amendatory process failed and new Article X is nugatory. The plaintiff contends that the form of question on the ballot used to obtain the approval of the electorate at the 1976 general election was so confusing and deceptively worded that it misled the voters. The defendants concede that the bonds may be issued only if new Article X is effective.[4]

The proposed bonds are being issued pursuant to the provisions of *S. C. Code Ann.,* Section 59-71-10, *et seq.* (1976), known as the School Bond Act. The bonds are to be issued without the election prescribed by the School Bond Act prior to its amendment by Act 125 of the Joint Acts and Resolutions of South Carolina (1977), which was designed as the statutory implementation of new Article X. Section 6 of the Act removes the requirement of the election. It is the plaintiff's contention that the ballot question created a latent defect in the amendment by misleading him so that he did not know that the election requirement was being removed until he received notice of the proposed issuance of the bonds in Newberry County.

The Petitioners-Defendants (hereinafter referred to as the defendants) present three basic arguments in their motion for summary judgment:

(1) Whether the failure of the plaintiff to contest the result of the general election held November 2, 1976, which submitted new Article X for the approval of the electorate, before the State Board of Canvassers, precludes him from contesting the election at this time?

---

[4] In addition to the bonds in question, other general obligation bonds of other political subdivisions of South Carolina have been sold recently and may not be delivered with this litigation pending, and other issues of the political subdivisions and of the State itself may not be offered until the question is decided. Also, this Court has been informed that many bond issues have already been sold by the State and its political subdivisions in reliance upon new Article X following its effective date.

(2) Whether the decision of this Court in *Hyder v. Edwards*, 269 S. C. 138, 236 S. E. (2d) 561 (1977) constitutes *res judicata* with respect to the validity of the adoption of new Article X?

(3) Whether the question employed to submit new Article X to the electorate at the election, when read in connection with the simplified explanation of the question, both of which were printed on the ballot, fairly apprised the electorate of the scope and purpose of new Article X?

Because we have determined that the first question is dispositive of the appeal, we need not reach the issues raised in the second and third questions.

Under the common law there is no right to contest an election. The right to contest an election exists only under the constitutional and statutory provisions, and the procedure proscribed by state must be strictly followed. The determination of election contests is judicial only when and to the extent authorized by statute; and the constitutional and statutory provisions in the various jurisdictions determine what tribunal shall entertain the proceeding, and only such tribunal shall do so. *See* 29 C.J.S. *Eletcions* §§ 246, 247, 252 (1965); 26 Am. Jur. (2d) *Elections* §§ 316, 318.

Article II, Section 10 of the South Carolina Constitution provides in part that "The General Assembly shall . . . establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."[5]

Title 7 of the South Carolina Code (1976) is known as the "South Carolina Election Law;"[6] and is applicable to all elections in South Carolina.[7]

---

[5] This amendment was proposed by Joint Resolution No. 1271 of 1970 and was ratified by Act 277 of 1971.

[6] *S. C. Code Ann.*, Section 7-1-10 (1976).

[7] Id., Section 7-1-40.

Sections 7-17-10, *et seq.* of the *S. C. Code Ann.* (1976) provide, *inter alia,* for the canvassing of votes.

The County Board of Canvassers decides "all cases under protest or contest that may arise in their respective counties in the case of county officers and less than county offices." Section 7-17-30. Appeal from the decision of the County Board is to the State Board of Canvassers. Section 7-17-60. The State Board acts in an appellate judicial capacity on those appeals. Section 7-17-250. Appeals from the State Board are taken directly to the Supreme Court on petition for Writ of Certiorari. Section 7-17-250. The actions of the State Board in this respect are final and may be reviewed by the Supreme Court only for errors of law, but not findings of fact, unless wholly unsupported by the evidence. *E. g. Redfearn v. Board of State Canvassers,* 234 S. C. 113, 107 S. E. (2d) 10 (1959). It is also clear that the protest concerning the election process must be made to the Board of Canvassers within the statutorily required time, or the suit will be barred. *E. g. Smith v. Hendrix,* 265 S. C. 417, 219 S. E. (2d) 312 (1975).

The State Board of Canvassers meets within 10 days after any "general election" for the purpose of "canvassing the vote for all officers voted for at such election, . . . and for the purpose of canvassing the vote on all Constitutional Amendments and questions and other issues." Section 7-17-220. Among other things the State Board certifies statements of all votes cast for and against Constitutional Amendments. Section 7-17-240. It is clear that the State Board is charged with deciding "all cases under protest or contest that may arise in the case of Federal officers, State officers and officers involving more than one county." The State Board acts in a judicial capacity in hearing the protests and contests. Section 7-17-270. Appeals from the State Board of Canvassers are directly to the Supreme Court on petition for Writ of Certiorari. Section 7-17-270.

The question which remains is whether the protest and appeal procedure provided in the election laws, including the

time for and forum in which protests and appeals are to be brought, apply to issues as to the sufficiency of ballot questions for constitutional amendments? We hold that they do.

In 1875, Chief Justice Moses said that "The term (canvassers) employed to designate the duty to be performed by the commissioners would seem to impose an obligation beyond that of merely counting the ballots and comparing the statements of managers." " 'Canvassing' implies 'search,' 'scrutiny,' 'investigation,' 'examination.' " *See State v. Nerland,* 7 S. C. 241, 259 (1875) ; *accord Ex Parte Mackey,* 15 S. C. 322, 332 (1880), and *State ex rel. Davis v. State Board of Canvassers,* 86 S. C. 451, 68 S. E. 676, 679 (1910).

The duties of the Board extend to canvassing the votes. The very definition of canvassing in this State would clearly imply that the Election Laws include hearing protests concerning the election process as to Constitutional Amendments. We have said before that the remedy for a similar question as to whether a Constitutional Amendment was properly adopted was to appeal first to the respective Boards of County Canvassers and then to the Board of State Canvassers. *See Stackhouse v. Floyd,* 248 S. C. 183, 149 S. E. (2d) 437, 444 (1966). In that case, the Court held that because the plaintiffs failed to pursue that remedy, the objections raised with regard to the conduct of the election had already been concluded against them by the action of the County Board and the State Board of Canvassers from which no appeal was made. *Accord, Smith v. Hendrix, supra.*

Here, the plaintiff below did not bring his objections to the election process before either the County Board or the State Board of Canvassers. Nor did he attempt to challenge the explanation before this Court before the general election, as he could have done under Section 7-13-2130. Therefore, we hold that the plaintiff's failure to pursue his statutorily provided remedies precludes this attack on the election process.

We see no unfairness to plaintiff in this holding. He claims that he had no notice that the referendum would no longer be required until after the School Bonds here were announced. Act 125 of 1977, which provided the statutory implementation of new Article X, was approved on May 30, 1977, and made it clear that the election concerning the issuance of School Bonds was no longer required. That provision was expressly made to be effective on the effective date of new Article X. Plaintiff, therefore, had notice of the alleged change many months before he brought this action and, considering the millions of dollars in general obligation bonds issued in reliance by the State and its political subdivisions, would therefore have been precluded under the doctrine of laches in any case.

Since plaintiff's failure to pursue his statutorily provided remedies precludes the bringing of this action, there are no genuine issues of material fact to be determined. Accordingly, the defendant's motion for summary judgment is granted and this action is dismissed.

It is so ordered.