2024

INDIGO ASSOCIATES and Newington Associates, Appellants
v. RYAN INVESTMENT COMPANY, d/b/a Tremond Inn, Respondent.

(431 S.E. (2d) 271)

Court of Appeals

*Thomas E. McCutchen* and *Hoover C. Blanton*, of *Whaley, McCutchen, Blanton & Rhodes*, Columbia, *for appellants.*

*Theodore von Keller* and *H. DeWain Herring, Jr.*, of *Adams, Quackenbush, Herring & Stuart;* and *Deborah R.J. Shupe*, of *Berry, Dunbar, Daniel, O'Connor & Jordan*, Columbia, *for respondent.*

Heard May 11, 1993; Decided June 1, 1993.

Reh. Den. June 30, 1993.

GOOLSBY, Judge:

Indigo Associates and Newington Associates (collectively "Indigo") brought this action against Ryan Investment Company, which does business as Tremond Inn, for ejectment because of Ryan's failure to make timely property tax and rental payments. The magistrate court ordered ejectment. Ryan appealed and the circuit court reversed. Indigo now appeals the circuit court's findings that Indigo failed to comply with the notice provisions of the lease, that Ryan cured any default under the lease, and that forfeiture in this case would be inequitable. We reverse.

The predecessors of Indigo and Ryan entered into a fifty-year ground lease for certain property in Cayce, South Carolina in 1955. Thirty-four years later, Ryan took an assignment of the lease and brought the motel building situated on the property. The lease contained a provision that required the lessee to pay all property taxes on the leased premises. Ryan consistently made late rental and tax payments.

On July 26, 1991, Indigio sent a certified letter to Tony McCreight, Ryan's president, in which Indigo informed McCreight that Indigo considered the lease in default because of Ryan's failure to pay the 1990 property taxes that had become due on January 15, 1991, and in which Indigo demanded payment of the taxes under the terms of Paragraph IIIf of the

lease.[1] Indigo addressed the letter to McCreight's offices in Columbia, South Carolina and not to The Citizens and Southern National Bank of South Carolina, as specified by the lease.[2]

An unidentified person in McCreight's office building received and signed for the certified letter on July 28, 1991; however, McCreight did not receive the letter until August 3 or 4, 1991. On August 30, 1991, Indigo paid the 1990 property taxes that Ryan owed on the leased property and brought the instant action in the magistrate court. Ryan paid the past-due rent and reimbursed Indigo for the property taxes on September 3, 1991.

In the magistrate court, Ryan took the position that Indigo, by accepting Ryan's late tax and rent payments, waived the forfeiture provision contained in the parties' lease and was therefore estopped from claiming forfeiture.[3] The magistrate,

---

[1]Paragraph IIIf of the lease provides, in pertinent part:

[I]f at any time rent, taxes, assessments, insurance premiums, and other charges and payments aforesaid, or any of them, or any part thereof, shall become in arrears and unpaid for a period of sixty (60) days after becoming due, . . . the [lessor], at any time thereafter, shall have full right, at his election, upon thirty (30) days' written notice, to enter upon the demised premises, and take immediate possession thereof, and bring suit for and collect all rents, taxes assessments, insurance premiums, or other charges which shall have accrued up to the time of such entry, and thenceforth from the time of such entry this lease shall become void to all intents and purposes whatsoever, and this lease, and all improvements made on said premises, shall be forfeited to [lessor] as liquidated damages without compensation, therefor to the [l]essee. . . .

[2]Paragraph IIIg of the lease provides, in pertinent part:

[A]ll notices which may be proper or necessary for the parties hereto to serve upon the other may, in case the one or ones to be notified be at the time non-residents of or absent from the County of Lexington, South Carolina, be effectually served upon such party by delivering the same, in writing addressed to such party, to The Citizens and Southern National Bank of South Carolina, Columbia, S.C. or such other company or agency as each may, by notice served upon the other, from time to time designate and appoint.

[3]When the magistrate asked Ryan's counsel to explain its position, Ryan's counsel responded:

Your Honor, there is no doubt, and we will stipulate to the fact that the real estate taxes and the rent were not paid in a timely fashion. However, I think there is also no dispute as to the fact that after the notice, payment of the rent and payment of the taxes has been made, and since that time, I think two more rental payments have been made. All of those payments have been accepted. . . . [B]ut I think that the case law is

however, found "there [was] no estoppel or waiver."

After the magistrate ordered Ryan ejected from the leased premises, Ryan appealed to the circuit court. Ryan based its appeal on the following three exceptions:

1.  The [magistrate] erred in concluding that [Indigo] had not waived the late payment of rent by the later acceptance of such rent, said error being that [Indigo] waived such default.
2.  The [magistrate] erred in concluding that [Indigo] had not waived the late payment of real estate taxes by the later acceptance of such payment, said error being that [Indigo] waived such default.
3.  The [magistrate] erred in issuing the Writ of Ejectment, said error being that [Ryan] has expended considerable sums on improvements on the premises, and

> very clear that where a landlord accepts rent after a forfeiture with knowledge of that forfeiture, that is a waiver of that clause and that the landlord is estopped from claiming that forfeiture. *Our position is that the acceptance of the rent after the time, and I might point out the acceptance of some months now, that that is a clear waiver.* (Emphasis ours.)

Later, in argument on Ryan's motion for directed verdict, Ryan's counsel argued:

> There is no issue here but that [Indigo], with full knowledge of the late payment of [Ryan], continued and continues to this day, to accept rental payments. That acceptance of rental payments after the default is a waiver of that clause in that lease, and the landlord is estopped, both in law and in equity, from claiming a forfeiture where they are continuing to accept late rent payments. . . . The case law is very clear in South Carolina that a landlord may reject a tender of the lease, but the failure to do that is a waiver. The landlord simply, in this case, wants his cake and to eat it, too. He wants to try to get the tenant out, but he still wants to get his money, and you can't have it that way in South Carolina, your Honor. It has got to be one or the other.
>
> . . . .
>
> We seem to be getting a bit afield here. *The question in this case, in my opinion, your Honor, gets down to a question of waiver.* There is no doubt but that the landlord knew that there had been late payment and that after that late payment the landlord has accepted and continues to accept late payments. It doesn't have anything to do with the excuse of not paying taxes or any of that. *It has to do with the question of whether they have waived and relinquished their rights by acceptance of a payment, and whether they are now estopped from claiming that forfeiture clause. We hold that they have, or we suggest to this court, rather, that they have. . . .* They are stuck by the terms just as we are. The difference is that when we failed to comply with the term, we remedied that, and they have accepted it. And that, I think, is the critical issue before this court. (Emphasis ours.)

an eviction in these circumstances is unduly harsh and [i]nequitable.

The circuit court reversed the magistrate, finding as a matter of law:

that [Indigo] has failed to comply with the terms of the lease as to notice; that under the terms of the lease [Ryan] was not in default, having cured the default within the time permitted under the lease[;] and that it would be inequitable to invoke forfeiture of the lease under all of the facts and circumstances.

As the circuit court noted in its order, the circuit court, pursuant to S.C. CODE ANN. § 18-7-170 (1985), in appeals from the magistrate court, "may affirm or reverse the judgment of the [magistrate], in whole or in part, as to any or all the parties or for errors in law or fact." Nonetheless, the circuit court is restricted regarding which issues it may entertain in determining whether a judgment should be affirmed or reversed, either in whole or in part. The circuit court, acting as an appellate court in a case heard by the magistrate, cannot consider questions that have not been presented to the magistrate. *See Sanders v. Hayes,* 128 S.C. 181, 122 S.E. 572 (1924) (where the defendant failed to object at the trial that the magistrate was related to the plaintiff although his attention was called to it, that objection cannot be raised on appeal); *Hill v. Garrett,* 83 S.C. 572, 65 S.E. 821 (1909) (wherein the court held the objections, on appeal from a magistrate court, were not available unless raised below). Also, the parties to an appeal from the magistrate court are restricted to the theory on which the case was tried in the magistrate court. 51 C.J.S. *Justices of the Peace* § 141, at 299 (1967); *see White v. Livinston,* 231 S.C. 301, 306, 98 S.E. (2d) 534, 537 (1957) ("It is well settled that one cannot present and try his case on one theory and thereafter advocate another theory on appeal."). Ryan clearly did not present to the magistrate for determination the issue of whether Ryan cured its default within the time prescribed by the lease agreement or the issue of whether it would be inequitable under the circumstances to invoke forfeiture of the lease. Certainly, neither of these two issues were ruled upon by the magistrate. As we

read the record, Ryan proceeded on the theory of waiver and nothing else.

Regarding the issue of notice, we recognize the magistrate, at least arguably, ruled on this issue;[4] however, the circuit court should not have considered it because none of Ryan's three exceptions, even when we, as we must do, construe each exception liberally, preserved the question of notice as a ground of appeal. *See Burns v. Gower,* 34 S.C. 160, 13 S.E. 331 (1891) (because Code S.C. § 358 (1882) requires appeals from a trial justice to the circuit court be heard on all the papers in the case, including testimony taken in writing on the trial "and the grounds of exception made," the circuit court can only consider those questions raised by the exceptions); S.C. CODE ANN. § 18-7-130 (1985) (providing that a circuit court hear an appeal from the magistrate court or other inferior court "upon all the papers in the case, including the testimony on the trial . . . and the grounds of exception made. . . ."); *cf. Connolly v. People's Life Ins. Co. of S.C.,* 299 S.C. 348, 352, 384 S.E. (2d) 738, 740 (1989) (an issue not raised "by [a] proper exception on appeal present[s] no question for appellate determination").

Unlike the circuit court, we do not accept Ryan's assertion that its third exception embraced the notice issue and we agree with Indigo that the issue of notice was an entirely new ground. The plain language of the third exception sets forth only the ground that because Ryan had expended considerable sums on improvements, its eviction from the leased premises would be "unduly harsh and [i]nequitable."

Reversed.

SHAW and CURETON, JJ., concur.

---

[4]In granting Indigo judgment, the magistrate noted, "In this particular case, [Indigo] put [Ryan] on notice."