## 24101

Douglas GREENE, Petitioner v. SOUTH CAROLINA ELECTION COM-
MISSION, The South Carolina Board of State Canvassers, The Aiken
County Election Commission, The Aiken County Board of Canvassers
and Lawana R. McKenzie, Respondents.

(445 S.E. (2d) 451)

Supreme Court

*James L. Leslie, Jr.*, Irmo, *for petitioner.*

*T. Travis Medlock, Atty. Gen., Edwin E. Evans, Chief Deputy Atty. Gen., Treva G. Ashworth, Deputy Atty. Gen.,* Columbia, *for respondents S.C. Election Com'n* and the *State Bd. of State Canvassers.*

*Dwight F. Drake* and *Carey T. Kilton,* both of *Nelson Mullins Riley & Scarborough,* Columbia, *for respondent Lawana R. McKenzie.*

*Robbin Stewart,* Kansas City, MO, and *David L. Floyd,* North Augusta, *for amicus curiae.*

Heard April 5, 1994.

Decided June 6, 1994; Reh. Den. July 13, 1994.

TOAL, Justice:

Douglas Greene ("Greene") appeals the decision of the State Board of Canvassers upholding the election results in the race for Aiken County Council seat for District 3. We affirm.

## FACTS

Greene was the unsuccessful Libertarian candidate for the Aiken County Council, District 3 seat. The official total vote was 628 votes to 623 votes. Greene lost the election by five votes.

Greene challenged the election results. A hearing was held before the Aiken County Board of Canvassers. At the hearing, eleven affidavits of registered voters were entered into evidence. All of the affidavits stated that the voters presented themselves at the poll but the poll manager did not allow them to vote in the District 3 County Council election. All of the voters were listed on the official voter registration roll as eligible to vote in District 2. None of the voters were listed as eligible to vote in the District 3 election. Several days after the election, the Aiken County Registration and Election Commission determined that at least six of the voters listed as eligible to vote in District 2 actually lived in District 3.

The Aiken County Board of Canvassers, finding no error in the conduct of the election, voted to sustain the result. Greene appealed to the South Carolina Board of Canvassers. The South Carolina Board of Canvassers found Greene failed to

produce any evidence that the "voters when challenged insisted in voting in District 3 and were refused a challenged ballot." We agree.

## LAW/ANALYSIS

The scope of appellate review of the State Board's order "is limited to corrections of errors of law; findings of fact will not be overturned unless wholly unsupported by the evidence." *Knight v. State Board of Canvassers*, 297 S.C. 55, 57, 374 S.E. (2d) 685 (1988); *Simms v. Hamm [Sims v. Ham]*, 275 S.C. 369, 271 S.E. (2d) 316 (1980); Berry v. Spigner, 226 S.C. 183, 84 S.E. (2d) 381 (1954). Every reasonable presumption in favor of sustaining a contested election will be employed and irregularities or illegalities which do not appear to have affected the result of the election will not be allowed to overturn it. *Fielding v. South Carolina Election Commission*, 305 S.C. 313, 317, 408 S.E. (2d) 232, 234 (1991).

The facts are not in dispute. At least six qualified voters presented themselves at the precinct to vote. Each of these voters was listed on the official voter registration roll as living in District 2. These voters were allowed to vote in the precinct elections, but they were not allowed to vote in the District 3 County Council election. None of the affidavits upon which Greene relies claim that any of these voters requested a challenge ballot and were refused. Greene claims, however, that S.C. Code Ann. § 7-13-810 (Supp. 1993) requires the poll manager to issue a challenge ballot when the voter questions the district to which the voter is assigned on the precinct voter registration roll.

S.C. Code Ann. § 7-13-810 (Supp. 1993) provides in pertinent part as follows:

> The managers of election shall prevent any person from voting when they have good reason to believe the person has already voted. They should refuse to allow any person to vote who is not a registered elector or who has become disqualified for any cause to vote in such voting precinct. . . . *Any elector or qualified watcher may, and it is the duty of the manager of the election to challenge the vote of any person who may be known or suspected not to be a qualified voter. . .* The manager *shall* then present

the challenge to the voter and act in accordance with the provisions provided for in this section. All challenges must be made before the time a voter receives a paper ballot or enters into a voting machine and no challenge may be considered after that time.

*Id.* [Emphasis added.]

The South Carolina Election Commission contends something more is required before the poll manager must issue a challenge ballot. We agree. S.C. Code Ann. § 7-13-830 (Supp. 1993) provides in pertinent part as follows:

When any person is so challenged, the manager shall explain to him the qualifications of an elector and may examine his [sic] as to the same. If the person *insists* that he is qualified and the challenge is not withdrawn, his vote must be received and placed in an envelope on which must be written the name of the voter and that of the challenger.

"The elementary and cardinal rule of statutory construction is that the Court 'ascertain and effectuate actual intent of the legislature.' " *Horn v. Davis Elec. Constructors, Inc.*, 307 S.C. 559, 563, 416 S.E. (2d) 634, 636 (1992) [internal citations omitted]. Statutes dealing with the same subject matter must be reconciled, if possible, so as to render both operative. *Bell v. South Carolina State Highway Dept.*, 204 S.C. 462, 467, 30 S.E. (2d) 65, 67 (1944). While we recognize the apparent mandatory language of S.C. Code Ann. § 7-13-10 (Supp. 1993), to read the statute as urged by Greene would require the poll manager to issue a challenge ballot to every voter who questioned the voting district listed on the voter registration roll. We do not believe the legislature intended such a result. S.C. Code Ann. § 7-13-830 (Supp. 1993) requires the voter or someone on the voter's behalf to *"insist"* on casting a challenge ballot.

"The making of a challenge is essential to the preservation of an adequate record upon which appellate review can be had." *Fielding v. South Carolina Election Commission*, 305 S.C. 313, 318, 408 S.E. (2d) 232, 235 (1991). Requiring the voter to insist on a challenge ballot at the poll preserves the record and prevents after-the-fact challenges to

otherwise proper elections. The purpose of S.C. Code Ann. § 7-13-710, *et seq.* is to assure the orderly and fair election of our public officials. Adopting Mr. Greene's interpretation of the Act would frustrate rather than further the legislative goal. Under the interpretation of the Act urged by Mr. Greene, affidavits of voters who did not bother to vote but were unhappy with the results could be collected for an after-the-fact challenge. In order to protect the voter's right to vote and also insure the integrity of the election, the Legislature required that the voter "insist" upon casting a challenge ballot. S.C. Code Ann. § 7-13-830 (Supp. 1993). In *Fielding,* we noted that a vote may be challenged by a watcher, elector, or manager. Thus, it was incumbent upon Greene's poll watcher to insist the poll manager issue a challenge ballot to voters who questioned their eligibility to vote in the District 3 election. As in *Hill v. South Carolina Election Commission,* 304 S.C. 150, 403 S.E. (2d) 309 (1991), the errors in placing voters in districts to which they did not belong were errors which could have been discovered prior to the election. Affidavits of voters who did not insist in voting in the District 3 election simply did not rise to the level of a "challenge" which required the issuance of a challenge ballot under the statute. *See Berry v. Spigner,* 226 S.C. 183, 84 S.E. (2d) 381 (1954) (affidavit of voter that poll manager cast voter's vote did not constitute challenge).

Affirmed.

CHANDLER, Acting C.J., FINNEY and MOORE, JJ., and WILLIAM H. BALLENGER, Acting Associate Justice, concur.