493 S.E.2d 838

Eddie A. BUTLER, and the Edgefield Branch of the
National Association for the Advancement of
Colored People, Respondents,

v.

The TOWN of Edgefield and Charlotte Cheatham in her Official
Capacity as Town Clerk, and The Edgefield Municipal Election
Commission and Aubrey Coleman, John S. Timmerman, and
Willie Lewis in their Official Capacities as Municipal Election
Commissioners, Appellants.

No. 24717.

Supreme Court of South Carolina.

Heard Sept. 18, 1997.

Decided Dec. 1, 1997.

240

James D. Nance and Kevin S. Little, Aiken, for appellants.

Brenda Reddix–Smalls and Eleazer R. Carter, Columbia, for respondents.

TOAL, Justice:

This case concerns a contest of the May 3, 1994 municipal election held in the Town of Edgefield. Appellant Town appeals the circuit court's order that the election results for the Ward 3 council seat be vacated and Respondent Eddie Butler be afforded a new election. We reverse the circuit court's holding and vacate its order.

### FACTUAL/PROCEDURAL BACKGROUND

On May 3, 1994, Town conducted municipal elections for mayor and council seats for Wards 1, 3, and 5. Butler was a candidate in the election and received votes for mayor and councilman in Ward 3. The official results for the Ward 3 council seat were as follows:

William B. Jackson, 34 votes

Eddie Butler, 33 votes

Jerry Butler, 1 vote

Eddie Butler, Jr., 1 vote

No persons with the name Jerry Butler or Eddie Butler, Jr. were candidates in the election. Additionally, one vote for Respondent Eddie Butler was disqualified due to an error indicated by the voting machine.

The votes were counted by the Edgefield Election Commission ("Election Commission") in the office of the Town Clerk, Charlotte Cheatham, in Edgefield's Town Hall. After counting the votes once, Election Commission conducted a recount. During the recount of the votes for Ward 3, the door to Cheatham's office was closed for approximately ten minutes. At trial, Cheatham testified that the door was closed due to noise in an adjoining hall. Butler testified that he attempted to enter the room during the recount, but was denied entrance.

On May 5, 1994, Butler delivered a hand-written letter to Election Commission. The letter protested the results of the election and demanded a recount. That same day, Election Commission notified Butler that a recount of the May 3 election would be held on May 6, 1994, at 12:00 p.m. A recount subsequently occurred on this date. Election Commission did not conduct a hearing. The recount verified the results of the May 3 election.

On May 13, 1994, Butler filed an appeal in circuit court pursuant to S.C.Code Ann. § 5–15–140 (1977). He argued that Election Commission violated S.C.Code Ann. § 5–15–130 (1977) by not affording him a hearing on his election contest. Butler also asserted a claim under the Federal Voting Rights Act and alleged that Election Commission secretly counted votes in violation of S.C.Code Ann. § 5–15–120 (1977). Finally, Butler argues to this Court that he properly amended his complaint in circuit court to include a claim under 42 U.S.C. § 1983.

The circuit court made three conclusions of law: (1) Town violated section 5–15–130 by not affording Butler a hearing; (2) Town violated section 5–15–120 by not publicly counting

the votes; and (3) the defendants were acting in their official capacities and under color of state law. The trial judge allowed voter Alice Miles to testify that the Eddie Butler, Jr. vote was hers, and that she intended to cast it for Eddie Butler. As a result, the circuit court found that Election Commission improperly declined to count the Eddie Butler, Jr. vote as a vote for Eddie Butler. It also observed that a vote cast for Eddie Butler was disqualified due to an error indicated by the voting machine. Consequently, the circuit court vacated the results of the May 3 election for the Ward 3 council seat and ordered a new election to be held in compliance with the law.

Town appeals, raising the following questions:

(A) Should Butler have been afforded a hearing on his election contest pursuant to section 5–15–130?

(B) Did Election Commission secretly count votes in violation of section 5–15–120?

(C) Should the disqualified vote and the vote for Eddie A. Butler, Jr., have been counted for Butler?

(D) Should the circuit court have considered the testimony of Alice Miles concerning her vote for Eddie A. Butler, Jr.?

(E) Did Butler properly amend his complaint to include a claim under 42 U.S.C. § 1983?

### LAW/ANALYSIS

### A. Statutory Hearing Requirement

Town argues that the circuit court erred in finding that Butler properly gave written notice of his election contest pursuant to section 5–15–130, thereby invoking his right to a hearing. We agree.

S.C.Code Ann. § 5–15–130 provides:

Within forty-eight hours after the closing of the polls, any candidate may contest the result of the election as reported by the managers by filing a *written notice of such contest together with a concise statement of the grounds therefor with the Municipal Election Commission.* Within forty-eight hours after the filing of such notice, the Municipal Election Commission shall, after due notice to the parties

concerned, *conduct a hearing on the contest,* decide the issues raised, file its report together with all recorded testimony and exhibits with the clerk of court of the county in which the municipality is situated, notify the parties concerned of the decisions made, and when the decision invalidates the election the council shall order a new election as to the parties concerned.

(emphasis added). Butler delivered his written contest notice to Edgefield's Town Hall on May 5, 1994. The notice stated:

I was a write-in candidate in the Edgefield May City Council election. I am protesting and requesting a recount of the votes cast. I am also requesting a poll watcher during the recount.

The first time I noticed the election advertisement was in the Edgefield County Citizen News on April 7, 1997. The wards [sic] numbers were reversed.

I am asking the United States Justice Department, the Attorney General, Janet Reno, the F.B.I. Director Louis Freeth [sic] and the NAACP to look into the reasons why it would take several hours to count votes for an election.

Mayor 155 votes

Ward I 17 votes

Ward III 67 votes

Ward II 17 votes

I am also asking for the sign-in signature sheet of the poll list and a total of votes received by the Mayor in each ward.

 Town contends that Butler did not properly follow the procedure provided in section 5–15–130 because he failed to provide a "concise statement of the grounds" for his contest. In *Taylor v. Roche,* 271 S.C. 505, 248 S.E.2d 580 (1978), we held, "Under the common law there is no right to contest an election. The right to contest an election exists only under the [state] constitutional and statutory provisions, and the procedure prescribed by statute must be strictly followed." *Id.* at 509, 248 S.E.2d at 582; S.C. Const. art. II, § 10 ("The General Assembly shall ... establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."). The notice in an election contest "should briefly state facts or a combination of

facts sufficient to apprise the contestee of the cause for which his election is contested, it being insufficient to allege generally that fraud was committed, or to allege mere conclusions of the pleader." 26 Am.Jur.2d *Elections* § 434 (1996). The purpose of the notice requirement is to adequately inform the contestee as to the nature of the contest. Section 5–15–130 codifies this by requiring a "concise statement of the grounds."

Butler argues that he provided two concise grounds in his May 5 protest letter: (1) the misleading election advertisement; and (2) the amount of time it took to count the votes. First, with regard to election notices, S.C.Code Ann. § 5–15–50 (1977) requires that "public notice of the elections [within the municipality] shall be given at least sixty days prior to such elections." In this case, official notice of the Edgefield elections appeared in the Edgefield newspaper, the Citizen News, on March 3 and April 28, 1994. The election was held on May 3, 1994. Thus, the March 3 notice satisfied section 5–15–50 by appearing in the local newspaper sixty-one days before the election. More importantly, Butler did not challenge these official notices in his May 5 protest letter. Instead, Butler challenged an article written by a Citizen News reporter about the election. This article appeared in the Citizen News in April 1994. Butler nevertheless argues that this was an adequate ground for his contest, thereby triggering the hearing requirements in section 5–15–130.

There are two prerequisites to maintaining an election contest in South Carolina: (1) the contest notice must allege irregularities or illegalities; and (2) the alleged irregularities or illegalities must have changed or rendered doubtful the result of the election in the absence of fraud, a constitutional violation, and a statute providing that such irregularity or illegality shall invalidate the election. *See Yonce v. Lybrand*, 254 S.C. 14, 18, 173 S.E.2d 148, 150 (1970); *Harrell v. City of Columbia*, 216 S.C. 346, 355, 58 S.E.2d 91, 96 (1950); *State ex rel. Welsh v. Jennings*, 79 S.C. 246, 248, 60 S.E. 699, 700 (1908); *State ex rel. Birchmore v. State Board of Canvassers*, 78 S.C. 461, 467, 59 S.E. 145, 146–47 (1907). In this case, the newspaper advertisement challenged by Butler was not an official notice given by Town. As noted above, Butler never challenged the official election notices. While the article may have been irregular in the sense that it contained false infor-

mation,[1] it had nothing to do with functions performed by Election Commission or any other governmental entity. We therefore hold that Butler's reference to the newspaper article in his contest letter was not a ground for protest under section 5–15–130 because it failed to allege an election irregularity or illegality.

Butler contends that while the challenge to the article may have been without merit, Election Commission should have conducted a formal hearing to properly inform him of that determination. The ability to contest elections is a privilege bestowed by state law. There is no common law or federal constitutional right to be afforded a hearing in an election contest. Consequently, we do not believe an election commission should have to initiate the time consuming formalities of a hearing when the contestant has failed, at the threshold, to allege an election irregularity or illegality.

The other point raised in Butler's May 5 letter was the time it took to count the votes. Butler simply asked, "why it would take several hours to count votes for the election?" Butler did not specify what he believed may have occurred during those several hours. At best, his question implied generally that fraud had been committed. A general allegation of fraud is insufficient to notify the contestee as to the cause for the contest. *See McClendon v. McKeown,* 230 Ark. 521, 323 S.W.2d 542, 544 (1959) (stating that "the pleadings, in an election contest case, should be sufficiently specific to give reasonable information as to the grounds for the contest."); 26 Am.Jur.2d *Elections* § 434. In *State ex rel. Davis v. State Board of Canvassers,* 86 S.C. 451, 68 S.E. 676 (1910), we held that "while ... technical precision in pleading should not be required [for election contests], still reason and justice require that the grounds relied upon should be stated plainly and clearly that the contestee may prepare to meet them without unnecessary labor or expense." *Id.* at 458–59, 68 S.E. at 679. Therefore, Butler's reference to the time it took to count the votes was not a ground for contest under section 5–15–130 because it amounted to nothing more than a general allegation of fraud.

---

**1.** The article was false because it stated that Councilman Jackson came from Ward 2. Councilman Jackson actually came from Ward 3.

■ The circuit court concluded that the vote recount was an improper substitution for the hearing requirement under section 5–15–130. However, since Butler did not provide concise grounds in his May 5 protest letter, a hearing was not required, and the recount was proper. We therefore reverse the circuit court on this point.

## B. Secret Vote Count

Town argues that the circuit court erred in holding that the vote count was conducted in secret thereby violating section 5–15–120. It is not necessary to reach the merits of this claim because it was not timely raised to Election Commission.

■ The only issue Butler could have raised on appeal to the circuit court was whether Election Commission should have afforded him a hearing based on his May 5 letter. Butler did not include the secret vote count claim in his protest letter. Section 5–15–140 does not provide the circuit court with express or implied authority to conduct a full hearing when one is denied by the municipal election commission. The circuit court, in this situation, is by statute an appellate court. It is axiomatic that "one cannot present and try his case on one theory and thereafter advocate another theory on appeal." *White v. Livingston,* 231 S.C. 301, 306, 98 S.E.2d 534, 537 (1957); *see also Indigo Associates v. Ryan Investment Co.,* 314 S.C. 519, 523, 431 S.E.2d 271, 273 (1993) (holding, "The circuit court, acting as an appellate court in a case heard by the magistrate, cannot consider questions that have not been presented to the magistrate."). We hold that the circuit court had no authority to consider the secret vote count allegation because Butler never raised it to Election Commission.

## C. Eddie Butler, Jr. Vote & Disqualified Vote

Butler also failed to challenge the Eddie Butler, Jr. vote and the disqualified vote in his May 5 letter. Consequently, for the same reasons discussed above, Butler could not subsequently raise these issues in his appeal to the circuit court.

## D. Voter Alice Miles

 As noted above, the Eddie Butler, Jr. vote was improperly before the circuit court because it was not timely raised to Election Commission. For this reason alone, the testimony of voter Alice Miles concerning her vote for Eddie Butler, Jr. was not properly taken. However, even if this issue was timely raised to Election Commission, it would never be appropriate for the circuit court, functioning as an appellate court, to consider testimony de novo.

 Moreover, voter testimony of this kind would not even be admissible before an election commission. It is well settled that "the ballots themselves constitute the highest and best evidence of the will of the electors." *Redfearn v. Board of State Canvassers*, 234 S.C. 113, 120, 107 S.E.2d 10, 14 (1959). Voter testimony is never admissible for the purpose of showing that the intention of the voter was in any way different from what plainly appears on the face of the ballot. 26 Am.Jur.2d *Elections* § 339. In this case, the write-in vote for Eddie Butler, Jr. was clear and unambiguous.

## E. Federal Claims

Town argues that Butler did not properly amend his complaint at trial to include a claim under 42 U.S.C. § 1983. We find that none of Butler's federal claims were properly before the circuit court.

Butler raised the following federal causes of action for the first time on appeal to the circuit court: (1) violation of the Fifth and Fourteenth Amendments to the U.S. Constitution; and (2) violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 *et seq.* In addition to these claims, Butler argues that he properly amended his complaint in circuit court to include a claim under 42 U.S.C. § 1983.

As discussed above, the circuit court serves an appellate function for municipal election contests pursuant to section 5–15–140. Consequently, it was improper for the circuit court to have considered Butler's federal claims. However, even assuming Butler's claims were properly before the circuit court, we find that no federal laws were violated in this case.

### 1. Voting Rights Claim

Under 42 U.S.C. § 1973(a), "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color...." In *Roberts v. Wamser*, 883 F.2d 617 (8th Cir.1989), the Eighth Circuit held "that an unsuccessful candidate attempting to challenge election results does not have standing under the Voting Rights Act." *Id.* at 621. The court observed that the contestant was "not an aggrieved voter suing to protect his right to vote." *Id.* The contestant had instead alleged as an injury the loss of votes he should have received in the election. This was precisely the situation here. Butler did not sue to protect his own right to vote; nor did he sue to protect the rights of others. The only injury alleged by Butler was the loss of votes for the Ward 3 council seat. We therefore hold that Butler did not have standing under the Voting Rights Act.

### 2. Section 1983 & 14th Amendment Claims

The prerequisites to an action under 42 U.S.C. § 1983 are that there be a deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States and that such act of deprivation occur under color of state law. We hold that Butler was not deprived of any federally protected right, privilege, or immunity.

Butler argues that Election Commission's refusal to provide a hearing violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), the United States Supreme Court held that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause." *Id.* at 7, 64 S.Ct. at 401, 88 L.Ed. at 502. Consequently, the denial of a hearing in this case was not violative of the due process clause because Butler was not deprived of any property or liberty interest contemplated by the Fourteenth Amendment.

*Snowden* is also determinative of Butler's claim that the Equal Protection Clause of the Fourteenth Amendment was violated. In *Snowden,* the Court held, "The unlawful administration by state officers of a state [election] statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden,* 321 U.S. at 8, 64 S.Ct. at 401, 88 L.Ed. at 503. In *Sylvia Development Corporation v. Calvert County, Md.,* 48 F.3d 810 (4th Cir.1995), the Fourth Circuit followed *Snowden* when it held, "To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." *Id.,* 48 F.3d at 819. Butler did not allege or set forth any facts which could establish purposeful or intentional discrimination on the part of the defendants.

### Conclusion

For the foregoing reasons, the decision of the circuit court is REVERSED and its order VACATED.

MOORE, WALLER, and BURNETT, JJ., concur.