642 S.E.2d 569

**Robert GECY, Respondent,**

v.

**Tammy BAGWELL, Appellant.**

**No. 26263.**

Supreme Court of South Carolina.

Heard Dec. 6, 2006.

Decided Feb. 20, 2007.

Keith D. Munson, of Womble Carlyle Sandridge & Rice, and Timothy Edward Hurley, both of Greenville, for Appellant.

James Theodore Gentry, of Wyche Burgess Freeman & Parham, of Greenville, for Respondent.

Samuel Darryl Harms, of Greenville, for Amicus Curiae Greenville County Republican Party.

PER CURIAM.

Appellant Tammy Bagwell, candidate for Simpsonville City Council, contested the results of the municipal election which resulted in respondent, Robert Gecy, being declared winner. The Simpsonville Election Commission ("Commission") invalidated the results and ordered a new election. The circuit court overturned the ruling of the Commission and reinstated Gecy as winner of the Simpsonville City Council seat. We reverse.

## FACTS

On November 8, 2005, the city of Simpsonville held an election to fill three seats on its city council. The two candidates on the ballot for the Ward IV race were appellant, Tammy Bagwell, and respondent, Robert Gecy. This was an at-large race, meaning all residents of Simpsonville were eligible to vote for the city council representative from Ward IV.

After a hearing to determine the validity of provisional ballots and after a mandatory recount pursuant to S.C.Code Ann. § 7–17–280 (1976), the final vote tally was 430–427 in favor of Gecy, with one write-in vote for another individual. The Commission certified the result and declared Gecy the winner of the election.

On November 10, 2005, Bagwell filed a timely protest of the election pursuant to S.C.Code Ann. § 5–15–130 (2004). As required by statute, the Commission held a hearing two days later to determine the issues raised by Bagwell's protest.

The Commission decided that at least two illegal votes had been cast,[1] and these votes rendered doubtful the result of the election. One of the illegal votes was cast by a voter who moved from her residence in one precinct to a residence in another precinct, and the other illegal vote came from a Simpsonville resident who voted in a precinct where his old business was located. Both voters failed to change their addresses or notify election workers and voted in their old precinct. The two illegal votes were subtracted from Gecy's total, leaving him with a total of 428 votes, preventing him from garnering a majority of the total votes cast.[2] The Commission then ordered a new election.

Gecy appealed the Commission's ruling to the circuit court. The circuit court overturned the Commission and reinstated the popular election result. The circuit court held that in the narrow context of a post-election challenge, the casting of votes in the wrong precinct did not affect the overall tally. The court also found Bagwell's notice of protest was legally insufficient for failing to state specific facts to apprise Gecy of the basis for the challenge.

Bagwell appeals the order of the circuit court reversing the Commission and seeks a new election for the contested seat.

## ISSUES

1. Did the circuit court err in overturning the Commission's ruling that at least two illegal votes were cast, putting the result of the election into doubt and necessitating a new election?

---

1. The Commission found two specific examples of illegal votes but inferred that other unnamed voters had voted illegally due to the short time available for investigation. The circuit court reversed this ruling, and this issue has not been appealed.

2. See *Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 382, 537 S.E.2d 543, 547 (2000) ("In determining whether an irregularity in the conduct of an election is sufficient to render the result doubtful, the rule deducible from the decisions is that all illegally cast ballots shall be deducted from the total number counted for the declared winning candidate . . .").

2.  Did the circuit court err in overturning the Commission's finding that Bagwell's protest pleading was legally sufficient?

## STANDARD OF REVIEW

In municipal election cases, we review the judgment of the circuit court upholding or overturning the decision of a municipal election commission to correct errors of law. The review does not extend to findings of fact unless those findings are wholly unsupported by the evidence. *Taylor v. Town of Atlantic Beach Election Comm'n*, 363 S.C. 8, 609 S.E.2d 500 (2005).

## ANALYSIS

Bagwell argues that the votes cast in the wrong precinct were illegal, and as a result, a new election should have been held. We agree.

In this case, two voters cast a ballot in a precinct where they previously were registered, but they no longer had a valid address in that precinct at the time of the election. Both parties agree that these two votes were not properly cast, and the question becomes whether these illegal votes should be thrown out, which would require a new election.

The election process is exclusively controlled by statute. S.C. Const. Art. II, § 10. We have recognized that perfect compliance with the election statutes is unlikely, and this Court will not nullify an election based on minor violations of technical requirements. *George v. Mun. Election Comm'n of City of Charleston*, 335 S.C. 182, 186, 516 S.E.2d 206, 208 (1999).

As a general rule, statutory provisions are mandatory in two instances: when the statute expressly declares that a particular act is essential to the validity of an election or when enforcement is sought before an election in a direct proceeding. *George*, 335 S.C. at 186, 516 S.E.2d at 208. However, the Court may deem such provisions to be mandatory after an election, and thus non-compliance may nullify the results, when the provisions substantially affect the determination of the results, an essential element of the election, or

the fundamental integrity of the election. *Id.* at 187, 516 S.E.2d 206. Where there is a total disregard of the statute, the violation cannot be treated as an irregularity, but it must be held and adjudicated to be cause for declaring the election void and illegal. *Id.* The Court will not sanction practices which circumvent the plain purposes of the law and open the door to fraud. *May v. Wilson,* 199 S.C. 354, 19 S.E.2d 467 (1942).

■ The use of precincts in our election process is a fundamental part of our statutory scheme. *See* S.C.Code Ann. § 7–5–110 (1976) ("No person shall be allowed to vote at any election unless he shall be registered as herein required.") and S.C.Code Ann. § 7–5–120(A)(3) (Supp.2005) (providing, as a qualification for registration, that the prospective voter must be a resident of both the county and the precinct in which he intends to vote); S.C.Code Ann. § 7–5–155(a)(3)(iii) (Supp. 2005) (requiring registration board to reject any voter application from which the board cannot determine the proper precinct to be assigned); S.C.Code Ann. § 7–7–940 (Supp.2005) (voter moving to new precinct must notify the registration board in his new county so that he may be informed of his new, correct precinct); S.C.Code Ann. § 7–5–440 (Supp.2005) (outlining specific procedures for voting by an elector who has moved to a new precinct but has not notified the county registration board); S.C.Code Ann. § 7–7–920 (1976) (in municipal elections when the councilmen are elected by an at-large vote, the electors shall vote at the voting place in the precinct within which they reside); and S.C.Code Ann. § 7–13–810 (Supp.2005) (election protest may be based on evidence of voters who voted in a precinct other than the one in which they are entitled by law to vote).

The disregard of the election statutes requiring electors to be residents of the precincts in which they vote, as well as failing to follow the procedure outlined in S.C.Code Ann. § 7–5–440 for those voters who have moved to a new precinct, constitutes more than a mere irregularity or illegality. The precinct system is an essential element of our voting process, and the failure of the two voters to adhere to the statutory requirements for registration and voting requires their votes to be rejected. Because the rejection of these two votes

results in Gecy no longer carrying a majority of the total votes cast, a new election must be held.

The second issue involves Bagwell's notice of protest. The circuit court determined Bagwell's notice of protest to be insufficient and found that her protest should have been dismissed. Bagwell argues that the notice of protest was sufficient under S.C.Code Ann. § 5-15-130 (2004). We agree.

Bagwell's notice of protest contained eight separate allegations. Bagwell argues that the third ground for the protest adequately alleged the irregularities surrounding the two illegal votes. That allegation asserted, "Persons who had not provided accurate information for the voter rolls were nonetheless allowed to cast full ballots."

Section 5-15-130 requires the notice of protest to include a "concise statement of the grounds" for the election contest. We have explained that the notice "should briefly state facts or a combination of facts sufficient to apprise the contestee of the cause for which his election is contested, it being insufficient to allege generally the fraud was committed, or to allege mere conclusions of the pleader." *Butler v. Town of Edgefield*, 328 S.C. 238, 245–246, 493 S.E.2d 838, 842 (1997) (quoting 26 Am.Jur.2d *Elections* § 434 (1996)); *see also State ex rel. Davis v. State Bd. of Canvassers*, 86 S.C. 451, 458–459, 68 S.E. 676, 679 (1910) ("while . . . technical precision in pleading should not be required [for election contests], still reason and justice require that the grounds relied upon should be stated plainly and clearly that the contestee may prepare to meet them without unnecessary labor or expense.") (cited in *Butler, supra* ).

In our opinion, the circuit court incorrectly determined that Bagwell's notice of protest failed to meet the statutory requirement. The notice of protest contained a concise statement of the grounds for Bagwell's challenge as required by § 5-15-130. Unlike *Butler,* there was no general allegation of fraud, and the notice of protest was sufficient to notify Gecy of the nature of the challenge.

Gecy provides two additional arguments, raised before the lower court but not ruled upon by the circuit judge, that he claims are sufficient to affirm the circuit court's decision. We only address one of Gecy's arguments. *See I'On, L.L.C., v.*

*Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (it is within appellate court's discretion whether to address any additional sustaining grounds).

■ Gecy contends that S.C.Code Ann. § 7–13–810, which allows for post-election challenges based on after-discovered evidence, requires the protesting party to exercise due diligence in obtaining information that could have been acquired prior to the election. Gecy argues that because Bagwell could have determined before the election that the two illegal voters no longer lived in the precinct where they were registered, her protest fails because it was not based on after-discovered evidence. We disagree.

Although this Court has defined after-discovered evidence in other contexts, the applicable election statute clearly provides:

> A candidate may protest an election in which he is a candidate pursuant to 7–17–30 when the protest is based in whole or in part on evidence discovered after the election. This evidence may include, but is not limited to, after-discovered evidence of voters who have voted in a precinct or for a district office other than the one in which they are entitled by law to vote.

S.C.Code Ann. § 7–13–810.[3] In addition, we have previously determined that evidence presented by a challenging candidate that "voters included on the voter registration list were not in fact city residents qualifies as after-discovered evidence under this section." *Dukes v. Redmond,* 357 S.C. 454, 457, 593 S.E.2d 606, 608 (2004).

In this case, evidence of the two voters who cast their ballots in a precinct where they no longer resided qualifies as after-discovered evidence allowed by § 7–13–810. Even though Gecy correctly points out that Bagwell could have

---

**3.** This section was added in 1996 after our decision in *Hill v. South Carolina Election Comm'n,* 304 S.C. 150, 403 S.E.2d 309 (1991); *see also Greene v. South Carolina Election Comm'n,* 314 S.C. 449, 445 S.E.2d 451 (1994). In *Hill,* we held that discrepancies between the district where a voter actually resided and the voter's district designation on the voter registration list could have been discovered prior to the election and could not be used for a post-election challenge. The amended version of the statute allows for after-discovered evidence that was prohibited by *Hill.*

discovered the evidence on which she bases her challenge before the election, we decline to require a candidate to review all registration books and match each registered voter with his current address before the election. The amended version of § 7–13–810 and *Dukes* specifically permit the same type of after-discovered evidence that was used by Bagwell.

## CONCLUSION

We reverse the circuit court's decision to reinstate Gecy as the winner of the Simpsonville City Council seat. The two illegal votes cannot be counted, and a new election is required.

**REVERSED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.