# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Glenn Odom, Respondent,

v.

Town of McBee Election Commission and Shilon Green, Appellants.

Appellate Case No. 2019-000147

―――――――――

Appeal from Chesterfield County
Roger E. Henderson, Circuit Court Judge

―――――――――

Opinion No. 27901
Heard May 29, 2019 – Filed July 24, 2019

―――――――――

## AFFIRMED AS MODIFIED AND REMANDED

―――――――――

Martin S. Driggers, Jr., of Sweeny, Wingate & Barrow, P.A., of Hartsville, Richard E. McLawhorn, Jr., of Sweeny, Wingate & Barrow, P.A., of Columbia, and Karl S. Bowers, Jr., of Bowers Law Office, LLC, of Columbia, for Appellants.

Kathleen C. Barnes, of Barnes Law Firm, LLC, of Hampton, John E. Parker and William F. Barnes, III, both of Peters, Murdaugh, Parker, Eltzroth & Detrick, of Hampton, for Respondent.

―――――――――

**JUSTICE JAMES:** This is an appeal arising from a McBee Town Council election contest commenced by candidate Glenn Odom. The McBee Municipal Election

Commission ruled on the contest, and Odom appealed the Commission's decision to the circuit court. The circuit court ruled in favor of Odom, and the Commission and candidate Shilon Green (collectively, Appellants) appealed to this Court. We affirm the circuit court as modified, remand to the Commission, and order the Commission to proceed in accordance with our holding.

"In municipal election cases, we review the judgment of the circuit court only to correct errors of law." *Taylor v. Town of Atl. Beach Election Comm'n*, 363 S.C. 8, 12, 609 S.E.2d 500, 502 (2005). "Our review does not extend to findings of fact unless those findings are wholly unsupported by the evidence." *Id.*

"There was no right to contest an election under the common law." *Id.* at 14, 609 S.E.2d at 503. In South Carolina, the right to contest an election exists only under our constitutional and statutory provisions, and "the procedure proscribed by statute must be strictly followed." *Taylor v. Roche*, 271 S.C. 505, 509, 248 S.E.2d 580, 582 (1978); *see also* S.C. Const. art. II, § 10 ("The General Assembly shall . . . establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."). Statutes which are in derogation of the common law must be strictly construed. *See Doe v. Brown*, 331 S.C. 491, 496, 489 S.E.2d 917, 920 (1997).

## I.

On September 4,[1] 2018, the Town of McBee held an at-large election to fill two seats on its Town Council. The five candidates for the two seats are Odom, Kemp McLeod, Donald Robinson, Sim Tyner, and Appellant Green; the two candidates with the most votes will fill the two seats. During the election, several people attempting to vote were challenged as nonresidents of McBee. This appeal centers upon votes cast by four of the challenged voters.

Section 7-13-830 of the South Carolina Code (2019) requires such challenged votes to be received, placed in an envelope, set aside, and delivered to the authority having control over the election (here, the Commission). This procedure was followed in the instant case, and the four sealed votes remain in the possession of the Commission. During a called meeting after the election, the Commission

---

[1] Appellants state in their brief the election was held on Wednesday, September 5. Odom states in his brief the election was held on Tuesday, September 4. The record on appeal contains nothing definitive as to the true date of the election, but during oral argument, counsel for the Commission stated the election was on September 4.

decided to not count these votes; the reasoning behind this decision is not in the record but is irrelevant to the issues before us. Not including these four votes, McLeod received 212 votes, Green received 209 votes, Odom received 208 votes, Robinson received 182 votes, and Tyner received 8 votes.

On September 6, 2018, Odom delivered a letter to the Commission in which he stated, "I would like to contest the official results" of the election. In the letter, he stated the four voters resided in McBee and were therefore qualified to vote in the election. In the letter, Odom also stated, "These contested votes will affect the outcome of the election." The clear import of his letter was that the four votes should be counted. Odom's contest letter was timely submitted pursuant to section 5-15-130 of the South Carolina Code (2004), which requires the filing of a written contest with the municipality's election commission. Section 5-15-130 further provides in pertinent part:

> [T]he Municipal Election Commission shall, after due notice to the parties concerned, conduct a hearing on the contest, decide the issues raised . . . and when the decision invalidates the election the council shall order a new election as to the parties concerned.

The Commission convened the required hearing on September 10, 2018; after a recess that day, the hearing resumed and concluded on September 25. The Commission heard testimony from Odom and the four challenged voters and heard arguments from counsel. The four challenged voters testified they were McBee residents at all appropriate times and further testified they voted for Odom. In its written decision, the Commission found the four voters were eligible to vote in the election. The Commission wrote: "Because adding the four votes to the total for Glenn Odom would have changed the outcome of the election, the Municipal Election Commission hereby invalidates the September 5, 2018 election and orders a new election as is required under S.C. Code Ann. § 5-15-130."

Odom appealed the Commission's decision to the circuit court, arguing the Commission erred in ordering a new election instead of simply counting the four votes and declaring he was a prevailing candidate. Citing section 5-15-130, the circuit court initially determined the only relief the Commission could grant was a new election. Odom filed a motion for reconsideration, arguing the circuit court erred in ordering a new election. He contended the circuit court should have adjudicated the case under section 7-13-830 and should have ordered the Commission to count the challenged votes and declare him one of the prevailing

candidates. In the alternative, Odom argued that even if section 5-15-130 solely applied, the circuit court erred in interpreting this section to require a new election.

The circuit court granted Odom's motion for reconsideration and held the Commission erred in invalidating the election and ordering a new election. The circuit court concluded, "This case involves a vote challenge, which is specifically provided for in Title 7 under § 7-13-830 and not Title 5." The circuit court ruled:

> Section 7-13-830 provides the "Procedure when voter challenged" and requires that "each ballot whose challenge was decided in favor of the voter must be removed from the envelope, mingled, and ***counted and the totals added to the previously counted regular ballot*** total . . . ." § 7-13-830 (emphasis added). This language applies to this voter challenge case and dictates that the four votes the Commission determined should have been counted are added to the previously counted ballots. The result of following this plain language is that Odom is the election winner and the Commission erred in ordering a new election rather than declaring him a winner.

> To apply § 5-15-130 to invalidate an election and require a new election when challenged votes are decided in favor of the voter would render § 7-13-830 meaningless because its remedy of counting the votes would never be used.

Consequently, the circuit court overturned the Commission and remanded the proceedings to the Commission to count the challenged votes and announce Odom as a prevailing candidate. Appellants appealed the circuit court's decision to this Court. At this stage, all parties concede the four votes were legally cast, and the sole issue is whether the four votes should now be unsealed and counted or whether the election should be invalidated and a new election held.

## II.

The cardinal rule of statutory construction is that the court ascertain and effectuate the intent of the legislature. *Greene v. S.C. Election Comm'n*, 314 S.C. 449, 452, 445 S.E.2d 451, 453 (1994). However, we must first attempt to construe a statute according to its plain language, and if the language of a statute is plain, unambiguous, and conveys a clear meaning, "the rules of statutory interpretation are

not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "The words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation." *Catawba Indian Tribe of S.C. v. State*, 372 S.C. 519, 525-26, 642 S.E.2d 751, 754 (2007).

After Odom filed his letter of contest, the plain language of section 5-15-130 required the Commission to convene a hearing and "decide the issues raised" in the contest. Section 5-15-130 further plainly provides that "when the [Commission's] decision invalidates the election the council[2] shall order a new election as to the parties concerned." The "issues raised" in Odom's contest were (1) whether the four voters who cast the challenged votes were truly eligible to vote and, (2) if they were, whether their votes should be counted. However, the Commission decided only the first of those two issues when it determined the four voters were eligible to vote; instead of then deciding whether it was feasible to count the four votes—which were sealed, set aside, and available for counting—the Commission skipped that inquiry and summarily concluded that adding the four votes to Odom's total "would have changed the outcome of the election." The Commission then invalidated the election and ordered a new election "as is required under [section 5-15-130]." As we will now explain, under the facts of this case, section 5-15-130 and our case law do not require the invalidation of the election and the holding of a new election.

## III.

If an irregularity occurs during the course of an election, the election must be invalidated and a new election held only if the irregularity was of the sort that renders doubtful the result of the election. *See Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 381-82, 537 S.E.2d 543, 547 (2000); *Easler v. Blackwell*, 195 S.C. 15, 19, 10 S.E.2d 160, 162 (1940). Appellants contend that because the outcome of the election would be changed by adding the four votes to Odom's total, the Commission properly determined there was an irregularity requiring invalidation of the election. While an irregularity might have occurred as a result of the Commission's initial refusal to count the four provisional ballots, that irregularity was cured when the Commission ultimately decided the votes were legally cast. Under the facts of this case, we reject the notion that the Commission's decision that

---

[2] Here, the Commission, not the McBee Town Council, is the body that ordered a new election. The text of the statute indicates this was not the Commission's decision to make. No party has raised this apparent irregularity. Therefore, we do not address it.

these four votes were legally cast constituted an irregularity in the conduct of this election. We also reject the notion that counting four legally cast votes would constitute an irregularity under the facts of this case.

Even if we were to conclude there was an irregularity as urged by Appellants, we hold the irregularity was not of the sort requiring invalidation of this particular election. Our conclusion is compelled primarily by the simple fact that the four provisional ballots were preserved and delivered to the Commission as required by section 7-13-830, and the votes remain available for counting. "Voters who have done all in their power to cast their ballots honestly and intelligently are not to be disfranchised because of an irregularity, mistake, error, or even wrongful act, of the officers charged with the duty of conducting the election, which does not prevent a fair election and in some way affect the result." *Taylor*, 363 S.C. at 12-13, 609 S.E.2d at 502 (quoting *Berry v. Spigner*, 226 S.C. 183, 190, 84 S.E.2d 381, 384 (1954)).

In three cases, this Court has ordered a new election when the addition of uncounted but legally cast votes or the subtraction of counted but illegally cast votes cast doubt upon the results of an election. Our holdings in these cases were fact-specific, and the facts of the instant case must guide our determination of whether section 5-15-130 requires invalidation of this election. In *Gecy v. Bagwell*, we invalidated a Simpsonville City Council election in which two candidates sought one open seat. 372 S.C. 237, 239, 245, 642 S.E.2d 569, 570, 573 (2007). A total of 858 votes were cast. *Id.* at 239, 642 S.E.2d at 570. Of that sum, two votes were illegally cast. *Id.* at 240, 642 S.E.2d at 570. The original winner received 430 votes, the original second-place finisher received 427 votes, and one vote was cast for a write-in candidate. *Id.* at 239, 642 S.E.2d at 570. The winner was required to receive a majority of the votes cast to be elected. *Id.* at 240, 642 S.E.2d at 570. With the two illegal votes being set aside, a total of 856 legal votes were cast, thereby requiring the winner to have received at least 429 votes. Because the two illegal votes had <u>not</u> been identified and separated from the legal votes, there was no way to tell for which candidate(s) the two illegal votes had been cast; it was therefore possible the winner received only 428 votes out of the 856 legal votes cast, which was exactly 50% and not a majority. *See id.* Because this would have resulted in the top finisher not receiving the required majority of the votes cast, we held the outcome of the election was in doubt, invalidated the election, and ordered a new election. *Id.* at 242-43, 642 S.E.2d at 571-72.

In *Easler v. Blackwell*, we invalidated an election for school trustees in Spartanburg County and ordered a new election. 195 S.C. at 23, 10 S.E.2d at 164.

Six candidates ran for three trusteeships. *Id.* at 18, 10 S.E.2d at 162. The candidate with the most votes would serve for three years, the candidate with the second-most votes would serve for two years, and the candidate with the third-most votes would serve for one year. *Id.* at 19, 10 S.E.2d at 162-63. A total of 690 votes were cast; the results were remarkably close, with the candidates receiving 347, 346, 346, 344, 339, and 336 votes, respectively. *Id.* at 18, 10 S.E.2d at 162. The board of canvassers sustained the validity of the election of the top three finishers despite a host of irregularities occurring during the election, including two people who were allowed to vote despite not having paid their poll tax and more than 100 voters being allowed to vote after the polls had closed. *Id.* at 17-18, 10 S.E.2d at 162. There was no way to tell for which candidate(s) the illegal votes were cast. *See id.* at 19-21, 10 S.E.2d at 162-63. We considered the closeness of the vote tally and concluded that because there was no way to determine for whom the illegal votes had been cast, the election must be invalidated and a new election held. *Id.* at 19-23, 10 S.E.2d at 162-64.

In *Broadhurst v. City of Myrtle Beach Election Commission*, three candidates were in a runoff election for two seats on Myrtle Beach City Council. 342 S.C. at 378, 537 S.E.2d at 545. Voters were permitted to vote for two candidates in the runoff. *Id.* Rachel Broadhurst finished third, 327 votes behind the first-place finisher and 212 votes behind the second-place finisher. *Id.* However, an electronic voting machine at a voting precinct malfunctioned, and it was determined that as many as 231 votes were cast at that machine. *Id.* There was no way to tell for which candidate(s) the 231 votes were cast. *Id.* There was no dispute that it was impossible for Broadhurst to have finished in first place, even if all 231 votes had been cast for her. *See id.* at 378, 537 S.E.2d at 545. We observed that while it was mathematically unlikely that Broadhurst would have received enough votes to move into second place, it was still possible. *Id.* at 382, 537 S.E.2d at 547. Therefore, we concluded the results of the election were in doubt, invalidated the election, and ordered a new city-wide runoff election including all three candidates. *Id.* at 387, 537 S.E.2d at 550.

*Easler*, *Gecy*, and *Broadhurst* are distinguishable from the instant case, as all three of those cases involved elections in which there was no way to tell for whom the disputed votes were cast; consequently, the only conceivable conclusion was that the results of the election were in doubt, and the only remedy in those cases was a new election. However, in the instant case, there is no dispute that the four voters were allowed to cast provisional votes. The four votes were placed in envelopes, the envelopes were sealed, and the envelopes were set aside and delivered to the Commission. The four votes are available for counting.

Appellants rely upon *Armstrong v. Atlantic Beach Municipal Election Commission*, 380 S.C. 47, 668 S.E.2d 400 (2008), for the proposition that the only relief that may be ordered in this case pursuant to section 5-15-130 is a new election. In *Armstrong*, there were two candidates for mayor of Atlantic Beach. *Id.* at 48, 668 S.E.2d at 401. Candidate Pierce won by one vote over candidate Armstrong. *Id.* Armstrong filed a protest, and the municipal election commission ordered a new election to be held after determining four voters who were not allowed to vote should have been allowed to vote. *Id.* On appeal, the circuit court upheld the election commission's order requiring a new election but ordered the filing period for candidates to be reopened. *Id.* Only Pierce, the original winner, appealed to this Court. *Id.* In affirming the circuit court's decision to order a new election, we held the one-vote spread rendered the result of the election doubtful and required a new election. *Id.* at 48-49, 668 S.E.2d at 401. Further, in reversing the circuit court's directive that the filing period be re-opened, we stated, "The only relief the Commission may order is 'a new election as to the parties concerned.' S.C. Code Ann. § 5-15-130 (2004). The circuit court does not have the authority to order any further relief." *Id.* at 49, 668 S.E.2d at 401. Appellants contend this statement makes it clear that ordering a new election is the only remedy the Commission may grant under section 5-15-130. We disagree.

Our statement that "[t]he only relief the Commission may order is 'a new election as to the parties concerned'" was made in the context of explaining that section 5-15-130 specifically provides that if a new election is ordered, the new election is restricted solely to "the parties concerned." Naturally, "the parties concerned" were the original candidates; therefore, reopening the filing period to other candidates would have been in violation of the statute. Appellants have taken the first half of the quoted passage from *Armstrong* ("[t]he only relief the Commission may order is a new election") out of context and have attempted to turn it into an unduly restrictive application of section 5-15-130.

As noted, we also held in *Armstrong* that the one-vote spread, coupled with four voters not being allowed to vote rendered the result of the election doubtful and required a new election. Some of the facts in *Armstrong* certainly resemble the facts of the instant case; however, those facts are distinguishable on a key point: in *Armstrong*, four voters "were denied the right to vote." 380 S.C. at 48, 668 S.E.2d at 401. Consequently, there were no provisional ballots to be counted once it was determined the voters should have been allowed to vote. However, in the instant case, the four voters were allowed to cast provisional votes, which were set aside and preserved and are available for counting. At the least, the issue raised by Odom

in the instant case—that the four challenged votes are identifiable and available for counting—was not raised in *Armstrong*. This is a critical distinction between *Armstrong* and the instant case; thus, we conclude our holding in *Armstrong* is inapplicable to this case.

Appellants contend nothing in section 5-15-130 contemplates the counting of the four votes that were sealed and set aside. We disagree. As we noted above, section 5-15-130 plainly requires a new election only when the Commission's decision "invalidates the election." The statute required the Commission to "decide the issues raised," and one of the issues raised by Odom's contest was whether the four votes should be counted. When the Commission decided the votes were legally cast, the Commission should have decided the votes should be counted. There is no evidence in the record and there is no provision of law to support the Commission's conclusion that a decision to count the votes would "invalidate the election," especially since the four provisional votes are available to be counted; if anything, the facts of this case, the law, and common sense all dictate the conclusion that the counting of these votes would preserve the integrity of the election process and propel the election to its legitimate end. These four voters did "all in their power to cast their ballots honestly and intelligently" and should not be disfranchised. *See Taylor*, 363 S.C. at 12-13, 609 S.E.2d at 502.

In drafting section 5-15-130 as it did, the General Assembly fulfilled its constitutional duty to preserve the integrity of the voting process. *See* S.C. Const. art. II, § 10 ("The General Assembly shall . . . establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."). A plain reading of the statute, as applied to the facts of this case, compels us to hold the four votes must be counted and applied to the appropriate candidate(s).

## IV.

We have concluded that section 5-15-130, under the facts of this case, requires the counting of the four provisional votes and does not require a new election; therefore, we need not address Appellants' contention that the circuit court misapplied the provisions of section 7-13-830. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).

# V.

We affirm the circuit court's decision to remand the proceedings to the Commission.  We modify the circuit court's order in two ways: first, we hold section 5-15-130, standing alone, requires the four votes to be counted; second, to the extent that the circuit court's decision can be read to order the Commission to declare Odom a prevailing candidate without the four votes first being counted, we hold the four votes must first be counted before the results of the election can be determined.  We remand to the Commission and order it to unseal the four provisional votes and apply those votes to the vote totals of the candidate(s) for whom the votes were cast, with the results of the election to then be declared accordingly.

**AFFIRMED AS MODIFIED AND REMANDED.**


**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**