# The Supreme Court of South Carolina

Glenn Odom, Respondent,

v.

McBee Municipal Election Commission, Charles Short, Charles Sutton, and Hewitt Dixon, Appellants.

Appellate Case No. 2021-000165

ORDER

After careful consideration of the petition for rehearing, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded, and hence, there is no basis for granting a rehearing. Accordingly, the petition for rehearing is denied. However, we withdraw the original opinion and substitute the attached opinion changing the original opinion only by adding text at the end of footnote 3.

s/ Donald W. Beatty                         C.J.

s/ John Cannon Few                          J.

s/ George C. James, Jr.                     J.

We would grant rehearing:

s/ John W. Kittredge                        J.

s/ Kaye G. Hearn                            A.J.

August 30, 2023
Columbia, South Carolina

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Glenn Odom, Respondent,

v.

McBee Municipal Election Commission, Charles Short, Charles Sutton, and Hewitt Dixon, Appellants.

Appellate Case No. 2021-000165

Appeal from Chesterfield County
Roger E. Henderson, Circuit Court Judge

Opinion No. 28133
Heard March 17, 2022 – Filed February 8, 2023

Re-filed August 30, 2023

**AFFIRMED**

Robert E. Tyson Jr. and Vordman Carlisle Traywick III, of Robinson Gray Stepp & Laffitte, LLC, of Columbia; Wallace H. Jordan Jr., of Wallace H. Jordan, Jr., P.C., of Florence; and Karl Smith Bowers Jr., of Bowers Law Office, of Columbia, all for Appellants Charles Short, Charles Sutton, and Hewitt Dixon.

Richard Edward McLawhorn Jr., of Sweeny Wingate & Barrow, PA, of Columbia; Martin S. Driggers Jr., of Driggers Law Firm, of Hartsville, both for Appellant McBee Municipal Election Commission.

John E. Parker and John Elliott Parker Jr., of Parker Law Group, LLP, of Hampton for Respondent.

**JUSTICE FEW:** The Town of McBee[1] Municipal Election Commission overturned the results of the town's September 2020 mayoral and town council elections after finding Sydney Baker violated a previous version of section 7-15-330 of the South Carolina Code (Supp. 2021)[2] by requesting applications to vote by absentee ballot on behalf of other voters. The circuit court found there was no evidence to support the election commission's decision and reversed. We affirm the circuit court.

## I.      Facts and Procedural History

Glenn Odom defeated Charles Short in the 2020 mayoral race by ten votes. James Linton and Robert Liles defeated Hewitt Dixon and Charles Sutton in the town council race by similar margins. The losing candidates from each race challenged the election results based on the allegation Sydney Baker violated section 7-15-330.

After the election, at a hearing before the election commission, Baker testified she "volunteered to help citizens" and used unpaid time off from work to "assist the citizens in voting" if they wanted to vote. Baker testified her actions included calling and going "door-to-door" to ask people if they "would like to vote absentee if they were working or if they were over [sixty-five]." If someone said yes, Baker explained, she "helped them obtain an absentee ballot." She testified she "assist[ed] them in the application process." When specifically asked about what she did, Baker testified "I had an iPad . . . and a printer in my truck. If they wish[ed] to [obtain the

---

[1] McBee is a small town in Chesterfield County in the Pee Dee region of eastern South Carolina. The town's residents, many descendants of its patriarch Colonel "Bunch" McBee, and other students of correct pronunciation of local names will appreciate the readers of this opinion observing that the correct pronunciation of the word McBee is "MAK-bi." *See* Claude Neuffer & Irene Neuffer, *Correct Mispronunciations of Some South Carolina Names* 113 (Univ. of S.C. Press 1983) (including a short statement of the history of the town and noting, "The unknowing often say mak-BEE . . .").

[2] The General Assembly substantially rewrote section 7-15-330 in 2022. *See* Act No. 150, 2022 S.C. Acts 1587, 1596-98; S.C. Code Ann. § 7-15-330 (Supp. 2022).

application], we did so right then. And if not, I moved on." The election commission also heard testimony from voters whom Baker assisted, which we discuss below.

The election commission reversed the results of the election. It found Baker violated section 7-15-330 by requesting absentee ballots for other voters, relying on its determination Baker was not credible when she denied doing anything that violated the statute.

The circuit court reversed the election commission. The circuit court found there was no evidence Baker did "anything improper in assisting voters." The election commission and the losing candidates appealed directly to this Court pursuant to subsection 14-8-200(b)(5) of the South Carolina Code (2017) and Rule 203(d)(1)(A)(iv) of the South Carolina Appellate Court Rules.

## II. Analysis

We begin with the text of the only provision of law applicable to this case: the version of section 7-15-330 in effect for the 2020 election.[3] The section provided

---

[3] The losing candidates argue Baker also violated subsections 7-13-770(A) and 7-15-380(A) of the South Carolina Code (2019) and those violations are a basis for overturning the election. While violations of subsections 7-13-770(A) and 7-15-380(A) were arguably raised to the election commission and circuit court, it is clear neither ruled on either issue. Accordingly, these issues are not preserved for our review. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). The losing candidates argued additional grounds other than Baker's conduct for overturning the election. The election commission rejected those arguments, however, and overturned the election only on the basis of Baker violating section 7-15-330.

In their petition for rehearing, the losing candidates argue they raised subsections 7-13-770(A) and 7-15-380(A) to the circuit court in a motion to alter or amend pursuant to Rule 59(e), SCRCP, asking the circuit court to rule on the claims arising from those subsections even though the court did not do so in its initial order. If that were true, at least at the circuit court stage of the proceedings, the losing candidates did not fail to preserve the issues for appeal. However, we have carefully reviewed the text of the Rule 59(e) motion and cannot find any mention of the statutes themselves or any argument related to the substance of the requirements they impose. Thus, the issues are not preserved.

that "a qualified elector," a "member of his immediate family," or "the . . . elector's authorized representative" may "request an application to vote by absentee ballot." Because Baker does not fit into one of those categories as to any of the voters at issue in this case, the section did not permit her to actually make the request for an absentee ballot application on behalf of any of them. However, there is nothing in section 7-15-330 that prohibits anyone—including Baker—from "assisting" a voter in requesting an application for an absentee ballot.

The applicable law, therefore, is straightforward. The former version of section 7-15-330 did not allow Baker to "request applications for absentee voting," but did not prohibit her from assisting someone else in requesting an application. The question before the election commission was whether Baker made the "request" for an application to vote absentee on behalf of any voter.[4] If she did, she violated section 7-15-330. On the other hand, if she merely assisted a voter in requesting an application, she did not violate the section.

The commission made the factual finding that Baker requested an application to vote by absentee ballot on behalf of "at least" ten voters.[5] The sole question before this Court is whether there is any evidence to support the election commission's finding. *Odom v. Town of McBee Election Comm'n*, 427 S.C. 305, 307, 831 S.E.2d 429, 430 (2019). If there is any evidence that supports the commission's finding, we must uphold the finding. *Id.*

Baker's testimony before the election commission was, "I volunteered to help citizens," "I helped [those who wanted to] obtain an absentee ballot," and "I help them obtain a ballot." She denied she ever requested any ballot application herself. In addition to Baker's testimony, the election commission heard from voters whom she assisted. Elizabeth Murphy, for example, testified Baker helped her with the

---

[4] The election commission addressed other issues not important to this appeal, such as whether Baker was paid for her volunteer work and whether she worked for Odom at the time of the election. While there was disputed evidence on both questions, it does not matter whether she was a paid volunteer or worked for Odom. In either circumstance, she was not permitted to request absentee ballot applications for others. The sole question is whether she did that or merely assisted voters in requesting them.

[5] The commission wrote in its order, "Baker applied for at least 10 and up to 28 absentee ballots."

absentee process because Murphy did not use the internet. She stated "two young people came to my house to assist with the registration and voting." Murphy did not testify Baker made the actual request for the application to vote absentee. Rayshawn Bracey testified he went to Baker's place of employment "to vote" so his "ballot could be sent to [his] address," but he did not mention Baker and he did not testify that anyone requested an application for him. Michael Williams testified he voted and requested his own ballot. He did not mention Baker. June Wright—who cannot read—testified he received an absentee ballot after he "sent for help."[6] Wright testified, "I asked them to help me . . . because I can't read," and "Sydney, she helped me out." When asked specifically on cross-examination, "You didn't request it, she did?," Wright answered—again—"No. She helped me, I asked her to help me to, you know, vote."

Each witness who appeared before the commission—including Baker—testified only that Baker assisted another person in requesting an application to vote by absentee ballot. No witness presented any evidence Baker violated the statute by making the request herself. Baker was asked numerous questions as to whether she requested an application for other people, as opposed to simply assisting those people in requesting ballots on their own. Each time, Baker gave an answer that was the equivalent of "no." Thus, neither Baker nor any other witness provided the commission with any evidence that Baker violated the statute. The commission decided, however, it did not believe Baker's testimony. On the basis of no witness providing any evidence of a violation and the election commission finding Baker's denial of a violation not credible, the election commission found a violation. It does not work that way. Baker's testimony that no violation occurred does not become evidence that a violation did occur simply because the factfinder finds the testimony not credible.

The dissent makes several points that warrant a response. First, it labels as "artificial dichotomy" the distinction between actually making a request for an absentee ballot for another person and assisting a person in making their own request. In recognizing this distinction, however, we have simply interpreted the applicable statute. In other words, we did not create the distinction; it is in the statute. Second,

---

[6] Wright discussed an affidavit stating he received an unsolicited absentee ballot. Wright testified he might have signed an affidavit, but was unsure. Wright also testified he told a private investigator he received an unsolicited absentee ballot. In his testimony before the election commission, however, he was clear that Baker assisted him with the process of requesting an application.

as the dissent notes, June Wright and Elizabeth Murphy—who also testified on behalf of her husband, Melvin Murphy—each testified only that Baker "assisted" them in requesting a ballot. Rayshawn Bracey said nothing about Baker in his testimony. Third, the dissent makes fun of our comment, "It does not work that way." It is a serious comment. The losing candidates bore the factual burden of proving Baker violated the statute. No witness testified Baker violated the statute and Baker herself denied violating the statute. No factfinder may take the denial of a fact, find the denial not credible, and treat its credibility finding as evidence of the fact. Finally, the dissent attributes to us "a rather selective view of the facts." However, the dissent has not recited a single piece of evidence that would support a finding Baker requested an application for another voter. Under that circumstance, our standard of review requires we reverse.

### III. Conclusion

Because there is no evidence to support the election commission's finding that Baker violated the statute, the circuit court was correct to reverse and reinstate the results of the election.

**AFFIRMED.**

**BEATTY, C.J., and JAMES, J., concur. Acting Justice Kaye G. Hearn dissenting in a separate opinion in which KITTREDGE, J., concurs.**

**ACTING JUSTICE HEARN:** Because I believe election commissions are better equipped to determine an election's validity than this Court, and that evidence supports the factual findings here, I dissent. The McBee Municipal Election Commission ("Commission") invalidated the town's 2020 election after hearing from witnesses and determining their credibility. That decision was not made in a vacuum; rather, it was reached after a lengthy hearing which resulted in credibility determinations, together with substantial knowledge of Baker's relationship with Odom[7] as well as the recent tortured history of municipal elections in McBee. Sitting in its appellate capacity, the circuit court determined there was "no evidence" to support the decision of the Commission and reversed. Under a rather selective view of the facts, the majority affirms the circuit court. I would honor our standard of review and reinstate the decision of the Commission.

An appellate court's review of decisions of a municipal election commission is very limited. "In municipal election cases, we review the judgment of the circuit court only to correct errors of law." *Taylor v. Town of Atlantic Beach Election Comm'n*, 363 S.C. 8, 12, 609 S.E.2d 500, 502 (2005). Likewise, a circuit court will not invalidate an election commission because, when "sitting in appellate capacity . . . it must accept the factual findings of the commission unless they are wholly unsupported by the evidence." *Id.* at 14, 609 S.E.2d at 503. Further, in all trials, the trier of fact possesses the fundamental authority to determine a witness is not credible when there is reason for disbelief. *See Crane v. Raber's Discount Tire Rack*, 429 S.C. 636, 639, 842 S.E.2d 349, 350 (2020) ("Our courts have frequently held that when the [workers compensation] commission makes a credibility determination based on substantial evidence, the credibility finding itself is substantial evidence, and factual findings properly based on the credibility finding are binding on the [appellate] courts").

---

[7] From the record, Baker's precise relationship with Odom is somewhat unclear. While Odom claimed he was no longer affiliated with Alligator Water Co., and therefore not Baker's co-coworker, the Commission disagreed with this assertion after being presented with evidence that his name still appeared on the company website on election day.

Today, the majority disregards our limited standard of review and holds there is no evidence that Sydney Baker committed illegal activity. To bolster this decision, the majority creates a distinction between mere "assistance" in the ballot requesting process and the actual requesting of a ballot, one being permissible and the other being impermissible.[8] And in applying this artificial dichotomy to the facts here, the majority, contrary to the Commission, completely accepts Baker's version of her conduct. Finding that she only assisted voters in requesting absentee ballots—not that she actually requested them on their behalf—the majority finds no violation of our voting law. I do not agree with supplanting the factual findings made by the Commission as to Baker's credibility, and I would hold that Baker's actions in traveling about the town in her van—armed with a computer and printer—requesting absentee ballots for voters, required her to comply with section 7-15-330's registry requirements.

The majority's version of the facts discounts the multiple witnesses who, by their own admission, were incapable of requesting their own ballots. For example, Rashawn Bracey testified he did not know how to go about requesting a ballot on his own and therefore went to Alligator Water Co.— Baker's place of employment—as he had in a previous election. Another witness, June Wright, stated that he was illiterate and therefore incapable of requesting his own ballot until Baker assisted him in doing so. Additionally, there was Elizabeth Murphy who testified that she voted absentee for herself and her husband after Baker came to her door and helped her request an absentee ballot. Her husband, Melvin Murphy, had suffered a major "massive heart attack stroke" and needed assistance in voting which both Baker and Mrs. Murphy provided him.

While it is certainly true that individuals with conditions inhibiting their ability to vote may receive assistance with the process, section 7-15-330 requires the volunteer to be registered as a qualified elector so that nefarious conduct, such as that alleged here, does not taint the election process. *See*

---

[8] Even the majority concedes that if Baker in fact requested ballots for individuals, that would be illegal conduct as she was not registered with the state and not related to the individuals involved.

S.C. Code Ann. § 7-15-330 (2019). Baker could have become registered simply by complying with the law—by being a registered voter, abstaining from paid campaign activity, and filing the requisite paperwork with the state. Instead, the clear inference from her conduct in this election as well as in past elections, was that she used her professional relationship with Odom and his business to request absentee ballots for voters without complying with the law.

I profoundly disagree with the majority's dismissal of the Commission's findings stemming from its credibility determination of Baker's testimony, particularly its statement that "this is not how it's supposed to work." The credibility of the witnesses, including Sydney Baker, was crucial to the resolution of this case, and was within the peculiar province of the Commission as the fact-finder. I would not second-guess the credibility findings of the Commission, which not only had the opportunity to view the witnesses but possessed a wealth of historical knowledge about Baker's relationship with Odom and her prior participation in municipal elections. The Commission, in an exercise of its discretion, found that Baker's testimony was less believable than other witnesses due to her bias and previous pattern of conduct. This finding was peculiarly within the province of the Commission, and, unlike the majority, I believe that is precisely how it is supposed to work.

The Commission coupled this evidence of violations with Baker's name appearing on up to 28 ballots. Similar to the *Broadhurst* case, scope is assessed not by looking to individual ballots, but by considering whether the election's outcome could be in doubt. *See Broadhurst v. Myrtle Beach Election Comm'n*, 342 S.C. 373, 382, 537 S.E.2d 543, 547 (2000) ("[E]ven though it may have been mathematically unlikely [the losing candidate] would have received 212 of the 231 uncounted votes, the Court has determined the best method to safeguard the purity of election is to add the irregular votes to the losing side." (footnote omitted) (citation omitted) (internal quotation marks omitted)). The Commission found that any ballot which listed Baker's name was irregular and that the election was decided by insufficient a margin to ignore the impact of this irregularity. I would hold

that this determination is supported by the evidence and would reinstate the decision of Commission.

**KITTREDGE, J., concurs.**