**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

Josephine Isom, Appellant,

v.

Town of Atlantic Beach Municipal Election Commission, Respondents,

And

John David, Intervenor.

Appellate Case No. 2024-002023

———————

Appeal From Horry County
William H. Seals, Jr., Circuit Court Judge

———————

Memorandum Opinion No. 2026-MO-010
Heard April 21, 2026 – Filed June 17, 2026

———————

**REVERSED AND REMANDED**

———————

Kenneth Allen Davis, Tierney Felicia Goodwyn, Charles J. Boykin, and Anyah Kinsley Barber, all of Boykin & Davis, LLC, of Columbia, for Appellant.

Christian Stegmaier and Henry Dargan McMaster, Jr., both of Collins & Lacy, PC, of Columbia, for Respondents.

Demetri K. Koutrakos, Ian T. Duggan and Harry Alwyn Dixon, all of Callison Tighe & Robinson, LLC, of Columbia, for Intervenor.

---

**PER CURIAM:** This is yet another election protest appeal arising from the seaside town of Atlantic Beach, population 195 (2020 census). This protest concerns the November 2023 mayoral election between Appellant Josephine Isom and John David. The Municipal Election Commission (MEC), after refusing to certify the election because of irregularities they believed cast doubt upon who won, ordered a new election. The circuit court affirmed.

After reviewing the record, we cannot find any evidence supporting such a doubt. We therefore reverse the MEC and the circuit court and direct the MEC to certify the election and declare Isom the winner.

## I.

In a municipal election case, we review the decision of the MEC using the same yardstick as the circuit court: we may only upset the judgment of the MEC if it is based on an error of law or factual findings that have no evidentiary support. *Odom v. Town of McBee Election Comm'n.*, 427 S.C. 305, 307, 831 S.E.2d 429, 430 (2019). Errors and irregularities may only invalidate an election if they make the result of the election doubtful. *Broadhurst v. City of Myrtle Beach Election Comm'n.*, 342 S.C. 373, 381, 537 S.E.2d 543, 547 (2000) ("In the absence of fraud, a constitutional violation, or a statute providing an irregularity or illegality invalidates an election, the Court will not set aside an election for a mere irregularity.").

## II.

When the ballots were counted on election night, 18 were challenged and set aside as provisional ballots pursuant to the procedure set forth in S.C. Code § 7-13-830 (2019) (stating "provisional votes must be kept separate and apart and not counted but turned over to the board of voter registration and elections or other authority having supervision of the election"). The record refers to the poll manager's initial count of 62 votes for Isom and 49 for David. This initial count excluded the 18 provisional ballots. Two days later, the MEC held a hearing on these challenges and denied them all. At this point, statutory law mandated that "each ballot whose challenge was decided in favor of the voter must be removed from the envelope, mingled, and counted and the totals added to the previously counted regular ballot

total of all precincts . . . ." § 7-13-830.  Following the statute, the MEC counted the 18 provisional ballots and noted David had received 16 of the votes and Isom 2.  It then announced that the new result of the election was 65 votes for David, 64 for Isom, and 2 for write-in candidates.

Isom filed an election protest with the MEC.  Due to delays, the protest hearing was not held until April 3, 2024.  Isom's protest, as amended, targeted 13 voters.  2 of these voters were not among the 18 provisional ballots at issue at the provisional ballot hearing.  In its final order, the MEC ruled that 14 votes were fraudulent because they were cast by persons not residents of Atlantic Beach (all 13 challenged by Isom, plus 1—Naim Vaughan—that Isom did not challenge).  12 of these votes were among the 18 provisional ballots that were included and counted in the 65-64 count.  As noted, Isom challenged 2 voters not part of the 18 provisional ballots; therefore, it follows that 12 of the 18 provisional ballot votes were fraudulent.  This means 6 of the 18 provisional ballots were legal votes.  It is true we cannot be certain which candidate these 6 votes were cast for, but we can still determine the certain winner even if we assume all 6 votes were for David.  If we award all 6 to David, the most votes he could have received was 55 (65 – 16 + 6 = 55).  If we take Isom's 2 provisional votes away from her, she would have 62.  However, even if we further subtract from Isom's total the 2 non-provisional ballots she challenged that were deemed fraudulent, she would still have 60 votes.  The total vote would be 117 (115 + the 2 write-ins), meaning Isom would be the winner with 60 votes or 51.2%.  This total vote count comports with the provisional ballot hearing numbers (65 + 64 + 2 – 14 = 117).

There was some sloppiness by the MEC, but not any irregularities that would change the outcome or render Isom's victory doubtful.  For example, the MEC order at one point states there were 18 provisional ballots, and at another point states there were 19.  Reviewing the MEC provisional ballot hearing transcript confirms that only 18 provisional votes were at issue and were accepted and counted on the record.  This mix-up, even if we again give David the benefit of any doubt it stirs up, would only mean that David should get 7 votes instead of 6.  But that would mean the total vote should be 118, and Isom would still win with 50.8% against 47.5% for David.

Judge Seals affirmed the MEC's ruling that the election could not be certified because the result was doubtful.  But there is no doubt once the math is understood.  The MEC and Judge Seals focused on the lack of evidence supporting the initial poll manager count of 62-49.  We agree that there is no testimony, exhibit (such as a voting machine total or other tally), or other evidence in the record to support the results of this initial count.  We note, though, that the 62-49 count coincides with the later 65-64 count that was made after the 16 provisional ballots were awarded to

David and 2 to Isom. At any rate, the number that is material is the 65-64 vote count that was conducted on the record by the MEC at the provisional ballot hearing. No one is disputing that count. And no one is arguing this on-the-record count is tainted by the earlier, unsupported 62-49 count. Judge Seals noted that the 65-64 count was the "only count evidenced in the record." And counsel for MEC acknowledged at oral argument that the 65-64 vote count was the "only one documented in the record." It is the result of the election that has to be doubtful to overturn it, not doubt about individual votes.

The Town contends that the provisional ballots approved at the provisional ballot hearing were comingled with the rest of the votes (as required by § 7-13-830) and, consequently, there was no way to know for whom the votes later declared to be illegal were cast. But this is wrong because, as we have explained, the transcript from the MEC provisional ballot hearing tells us David received 16 of the provisional votes and Isom 2. The challenged provisional votes were available for counting and in fact were counted on the record. *Odom*, 427 S.C. at 312, 831 S.E.2d at 432–33 (holding that election should not have been invalidated and a new election ordered where four disputed votes had been set aside and sealed as required by § 7-13-830 and were available to be counted). There was comingling, but it was the comingling required by statute and not "inextricable" comingling as the MEC found. Viewed in this way, the election result was not doubtful. "The Court will employ every reasonable presumption to sustain a contested election, and will not set aside an election due to mere irregularities or illegalities unless the result is changed or rendered doubtful." *Broadhurst*, 342 S.C. at 379, 537 S.E.2d at 546.

The MEC was convinced that because some of the votes Isom protested differed from those challenged and set aside as provisional ballots, it was impossible to determine which candidate the disputed votes were cast for, therefore riddling the result of the election with doubt.

We conclude this factual finding of the MEC is unsupported by the evidence. The provisional ballots were preserved and counted on the record. As Justice James' opinion in *Odom* well noted, as a general rule, our previous decisions have only overturned elections when "there was no way to tell for whom the disputed votes were cast." 427 S.C. at 314, 831 S.E.2d at 434.

Contrary to what the MEC found, after the protest process played out, the result of the election was not in doubt, as it was possible to determine the winner. What was impossible was for David to win.

To hold otherwise would be to disenfranchise the voters who exercised their fundamental right of suffrage. As in *Odom*, "the facts of this case, the law, and common sense all dictate the conclusion that the counting of these votes would preserve the integrity of the election process and propel the election to its legitimate end." 427 S.C. at 316, 831 S.E.2d at 435.

Accordingly, we reverse the order of the trial court and remand to the MEC to certify Isom as the winner of the November 2023 mayoral election.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**